**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KARIN GERTRUDE HARRIS, *ET AL.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Case No: 06-732 (RWR) |
| ) | |
| THE SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA, *ET AL.,* ) | |
| ) | |
| Defendants. ) | |

**MOTION TO DISMISS**

    Defendants, the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization (hereafter "Libya") move to dismiss plaintiffs' complaint for lack of subject-matter and personal jurisdiction, and in the alternative for failure to state a cause of action for which relief can be granted. A memorandum of points and authorities follows.

Dated:       January 15, 2007

                                                 Respectfully Submitted,

                                                 //s//
                                                 Arman Dabiri
                                                 Law Offices of Arman Dabiri &
                                                     Associates, PLLC
                                                 1725 I Street, N.W.
                                                 (202) 349-3893
                                                 Washington, D.C. 20006
                                                 E-mail: armandab@worldnet.att.net

                                                 *Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIN GERTRUDE HARRIS, *ET AL.*,   ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | Civil Case No: 06-732 (RWR) |
| THE SOCIALIST PEOPLE'S LIBYAN   ) | |
| ARAB JAMAHIRIYA, *ET AL.,*   ) | |
| ) | |
| Defendants.   ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

This memorandum is submitted in support of the Libya's motion to dismiss this suit under Rule 12(b)(1) and (2), F. R. Civ. P., for lack of subject-matter jurisdiction and for lack of constitutional personal jurisdiction under the Foreign Sovereign Immunities Act of 1976, as amended, and in the alternative to dismiss the suit under Rule 12(b)(6), F. R. Civ. P., for failure to state claims against Libya upon which relief can be granted.

**PLAINTIFFS' ALLEGATIONS**

Plaintiffs bring this action seeking wrongful death, compensatory and punitive damages against Libya for alleged acts arising out of the April, 5 1986, of the bombing of the "La Belle" discotheque in West Berlin, Germany. Plaintiffs' complaint alleges that the La Belle attack was carried by members of the Abu Nidal Organization who were directed by and received assistance and support from Libya. In support of their allegations plaintiffs have not provided any evidence for the Court's consideration but rather weave a fantastic story of intercepted telex communications, confessions by terrorists and Libyan leaders and alleged assertions of United

States military personnel accusing Libya of directing and aiding the Abu Nidal Organization which carrier out the attack in West Berlin.

**ARGUMENT**

**I.     INTRODUCTION**

The Foreign Sovereign Immunities Act of 1976 ("FSIA") starts with the general rule that foreign states are immune from suit in the United States courts; it also lists the limited circumstances under which a foreign state will be denied immunity and establishes that the Act is the sole basis for asserting jurisdiction over foreign nations in Unites States Courts. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989). The Supreme Court has held that "a foreign state is presumptively immune from jurisdiction of United States courts, and that unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1604.

In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, §221(a), 110 Stat. 1214 (Apr. 24, 1996) (1996 Amendment), Congress amended the FSIA to add a new exception to sovereign immunity where money damages are sought against foreign states that have been designated as state sponsors of terrorism by the Secretary of State. Suit may be brought under the 1996 Amendment for *personal injury* or *death* caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act. 28 U.S.C. § 1605(a)(7); *see* Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 87 (D.C. Cir.

2002) (hereafter "Price I).

It is has also been established, both by the Supreme Court, as well as almost all Circuit Courts of Appeals within the federal system, that the FSIA provides the **sole** source of subject-matter jurisdiction in suits against a foreign state. Argentine Republic, 488 U.S. at 434-39. *See* Republic of Austria v. Altman, 541 U.S. 677, 697-700 (2004); Chance v. Taiwan, 86 F.3d 1146 (1st Cir. 1996); Robinson v. Government of Malaysia, 269 F.3d 133, 138 (2d Cir. 2001); Sandoval v. Reno, 166 F.3d 225, 235 (3d Cir. 1999); Velasco v. The Government of Indonesia, 370 F.3d 392, 395 (4th Cir. 2004); In re B-727 Aircraft Serial No. 21010, 272 F.3d 264, 270 (5th Cir. 2001); Keller v. Central Bank of Nigeria, 277 F.3d 811, 820 (6th Cir. 2002); Sampson v. Federal Republic of Germany, 250 F.3d 1145, 1148 (7th Cir. 2001); Flatow v. Islamic Republic of Iran, 308 F.3d 1065, 1069 (9th Cir. 2002); Southway v. Central Bank of Nigeria, 328 F.2d 1267, 1271 (10th Cir. 2003); Alejandre v. Telefoncia Larga Distancia, de Puerto Rico, Inc., 183 F.3d 1277, 1282 (11th Cir. 1999). [1]

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990)). Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing Amerada Hess, 488

---

[1] No case on point was found in the United States Court of Appeals for the Eighth Circuit.

U.S. at 434-35).

Libya, pursuant to 50 U.S.C. App. § 2405(j) or 22 U.S.C. § 2371, was formerly designated as a State Sponsor of Terrorism by the Secretary of State in 1979. Designations under these statutes are made by the Secretary of State for the purposes of regulating, respectively, exports and foreign aid. But since the passage of § 1605(a)(7) in 1996, the Secretary's designations also affected foreign sovereign immunity.

On May 12, 2006, however, the President of the United States, through Presidential Determination No. 2006-14, titled as a "Memorandum for the Secretary of State" provided certification for rescission of Libya's designation as a State Sponsor of Terrorism. A Memorandum of Justification accompanied the President's Declaration which was forwarded to Congress and provided for a review period of 45 days upon the termination of which the Secretary of State could rescind Libya's terrorist designation at the discretion of the Executive.

Libya, on or about June 30, 2006, was subsequently removal from the State Department's list of designated state sponsors of terrorism.

## II.    LIBYA'S REMOVAL FROM STATE DEPARTMENT LIST

The Supreme Court previously has upheld the existence of federal court jurisdiction when jurisdiction depended on a factual determination that had been delegated to the Department of State. *See* Jones v. United States, 137 U.S. 202 (1890). The Second Circuit also has denied jurisdiction on the basis of an analogous finding by the executive branch. See Matimak Trading Co. v. Khalily, 118 F.3d 76 (2d Cir.1997), *cert. denied* 522 U.S. 1091(1998).

The Supreme Court case above occurred more than a century ago due to the federal

indictment of an individual for murder on the Caribbean island of Navassa.  *See* Jones, 137 U.S. at 216.  Jurisdiction to try the individual in an American court depended on the island's status as American territory.  The Secretary of State had then deemed Navassa as an area "appertaining to the United States." Id. at 217.  He had made that announcement pursuant to the Guano Islands Act of 1856, § 1.  The Act empowered the President to declare Caribbean guano islands American. See id. at 209.  The Supreme Court held that such a declaration could be made "through the Department of State, whose acts in this regard are in legal contemplation the acts of the president." Id. at 217.  The Court went on to hold that the Secretary's statement did in fact make the island one "appertaining to the United States" and that jurisdiction over Jones's crime was therefore proper.  Id. at 224.

The Supreme Court has also extensively considered the issue of federal court jurisdiction.  The Supreme Court, in relevant part, held:

> Congress may exert its power . . . by imposing judicial function of adjudicating justiciable controversies on the regular federal courts which under the Constitution it has the power to ordain and establish and which I may invest with jurisdiction and from which it may withhold jurisdiction in exact degrees and character which to Congress may seem proper for the public good. (Emphasis added, internal citations and quotes omitted).

National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc., 337 U.S. 582, 600 (1949).  The Supreme Court has also specifically addressed the issue of withdrawal of jurisdiction of federal courts and the effect of such withdrawal or repeal on pending actions.  The Court, in Bruner v. United States, 343 U.S. 112, 116-117 (1952), in relevant part, held:

> Jurisdiction in such cases was conferred by an act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as jurisdiction

>depended entirely upon the act of Congress . . This rule-that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law-has been adhered to consistently by this Court.

*Id*. In the instant case Congress has delegated the authority of designating foreign states as state sponsors of terrorism, which affects sovereign immunity of that foreign state, to the Executive Branch of the Government. The Executive Branch has now rescinded Libya's designation. Presidential Determination No. 2006-14 of May 12, 2006 contains no reservation of jurisdiction for pending cases.[2]

Consequently, due to unconditional restoration of Libya's sovereign immunity, the Court lacks subject-matter jurisdiction to decide the case. The Court should dismiss this action in its entirety against as Libya.

### III.  COURT LACKS SUBJECT-MATTER JURISDICTION UNDER TERRORISM AMENDMENT

The court also lacks subject-matter jurisdiction to decide this case under the Terrorism Exception to the FSIA. 28 U.S.C. § 1605(a)(7).

Plaintiffs have not presented a scintilla of evidence to support the allegations of the complaint. No documentary evidence has been submitted, no affidavits of any witnesses or

---

[2] Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123 (D.C. Cir. 2004) denied Libya's motion to dismiss on the same grounds. The Court of Appeals, by way of summary affirmance, denied Libya's appeal in the Kilburn Matter. Kilburn v. Islamic Republic of Iran, *et al*, Docket No. 06-7127 (D.C. Cir. 2006). That case is, however, distinguishable from the instant case as the Court in Kilburn had, prior to Libya's removal from the list of state sponsors of terrorism and its full restoration of foreign sovereign immunity, made a determination of its own competence and had held that it could exercise subject-matter jurisdiction over the case.

experts have been presented. Plaintiffs allegations of the connection between Libya and the La Belle Discotheque explosion consist of confessions by the individual Musbah Abulgasem Eter in the German Embassy in Malta (transcripts of confession not produced), evidence relied upon by Major General John H. Mitchell based on "secret national defense information from reliable sources" (reliable sources, not surprisingly, not identified, no affidavit or testimony By Major-General Mitchell presented) and finally a secret meeting between Colon Ghadaffi and an advisor to the German Chancellor Schroder (Mr. Steiner) where allegedly the Qhadaffi <u>confessed</u> the role of Libya in the incident (as well as the Pan American Flight 103 bombing over Lockerbie Scotland). This incredible confession was in 2001 reported to the President of the United States, Secretary of State Collin Powell, and National Security Advisor Condoleeza Rice by Mr. Steiner. (Comp. at ¶¶ 13, 14, 15). Plaintiffs also assert the ridiculous assertion that the individual Eter is a member of the Libyan Government and that immediately after the attack he declared "This is the answer to the Americans, a gift from Gadhafi to Reagan". (Compl. at ¶¶ 6 and 9 respectively). It is unclear why an Arab individual would make a statement in English and how plaintiffs' are in a position to allege such a fact. It is evident that the allegation is most likely a well written, and entertaining, work of fiction as no evidence to corroborate or support this wild allegation is presented by the plaintiffs.

  Unsupported allegations and mere conclusory statements will not suffice to strip Libya of its immunity. As plaintiffs have attached no documents, cited only uncorroborated witnesses, and have presented nothing other than mere conclusory allegations in support of their assertions the Court should decline to exercise subject-matter jurisdiction under the FSIA terrorism Amendment and should dismiss plaintiffs' complaint. In the alternative, the Court should allow

only Libya to conduct limited jurisdictional discovery to ascertain whether plaintiffs' have any evidence in support of their wild allegations.

The Court should also dismiss this action as plaintiffs' allegation that "Lorenzo Alexander Harris . . . died four years later as a result of his physical injury [at La Belle]" is wholly unsupported. The Court should dismiss the claim for wrongful death in its entirety. Plaintiffs have failed to provide any proof other than simply concluding that Mr. Harris died due to injuries received in La Belle. Without clear proof that Mr. Harris suffered permanent breathing abnormalities at the discotheque due to the explosion, and his death four years later were caused as a result of those injuries, plaintiffs' death claims should be dismissed.

### IV.   COURT LACKS PERSONAL JURISDICTION OVER LIBYA

Libya is fully cognizant that the issue of the constitutionality of personal jurisdiction over the state has been decided adversely by this Court in Price I; to preserve the issue for potential further review, the matter is respectfully raised once again in this instant case as the holding in Price I may now be in question due to the language in Republic of Austria v. Altman, 541 U.S. 677, 713 (2004), which held:

> For one thing, statutes of limitations, **personal jurisdiction** and venue requirements, and the doctrine of *forum non conveniens* will limit the number of suits brought in American Courts.

Id. (emphasis added).

### V.   PUNITIVE DAMAGES NOT AVAILABLE

28 U.S.C. § 1606, in relevant part, states that "a foreign state except for an agency or

instrumentality thereof shall not be liable for punitive damages". Consequently plaintiffs claim for punitive damages should be dismissed pursuant to the clear prohibition enunciated in the FSIA. Libya asserts that the Libyan External Security Organization is not an agency of the Libyan government but it is a department within the Libyan Government. Any questions regarding the status the Libyan External Security Organization can be resolved in reliance on this Circuit's adopted categorical approach in determining whether any named defendant is an agency or instrumentality of a foreign state or whether it is a political subdivision of the foreign state. In Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 149-53 (D.C. Cir. 1994) this Circuit Court held that "Any government of reasonable complexity must act through men organized into offices and departments." *Id.* at 153. The Court adopted the following approach: if the core functions of the entity is governmental, it is considered the foreign state itself; if commercial, the entity is an agency of instrumentality of the foreign state. *Id.* This categorical approach was again confirmed most recently in Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003).

There can be no doubt that the external security apparatus of Libya is not commercial in nature and that it performs purely governmental activities related to the security of the sovereign state of Libya. The categorical approach in this Circuit clearly proves that the above named defendant is not an agency or instrumentality of Libya as asserted by plaintiffs but a department within the Government. Libya also attaches for the Court's review an opinion (English translation and original Arabic) by the Head of Legal Affairs Department, Justice and State Security General Popular Committee of the Libyan Government regarding the status of the Libyan External Security Organization within the government of Libya (Exhibit A parts 1 and

2).

The opinion, based on Libyan law, clearly demonstrates that the Jamahiriya Security Organization is a department within the Libyan Government and does not have a distinct and separate legal identity.

Section 1606 provides that Libya and the Jamahiriya Security Organization may not be held liable for punitive damages. Thus the Court should dismiss plaintiffs' unsustainable request for punitive damages as both Libya and the Jamahiriya Security Organization enjoy full sovereign immunity from punitive damages.

## VI.     FAILURE TO STATE A CAUSE OF ACTION

### A.     *FLATOW AMENDMENT DOES NOT CREATE A CAUSE OF ACTION*

The Civil Liability for Acts of State Sponsored Terrorism, Pub.L. No. 104-208, Div. A, Title I, § 101© [Title V, §589], Sept 30, 1996, 110 Stat. 3009-172, reproduced as a **note** to 28 U.S.C. § 1605(a)(7) (incorrectly referred to as the"Flatow Amendment" rather than the "Flatow Act"), reads, in relevant part, as follows:

> **"(a)** An official, employee, or agent of a foreign state designated as state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 [section 2405(j) of the Appendix to Title 50, War and National Defense] while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States maintain jurisdiction under section 1605(a)(7) of title 28 United States Code [subsec. (a)(7) of this section] for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7) [subsec. (a)(7) of this section]."

This District of Columbia Circuit Court, in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024, 1033 (D.C. Cir. 2004) conclusively held that the Flatow Act and the 1996 Amendment to the FSIA (§ 1605(a)(7)) did not create a private cause of action against a foreign government. The Court, in relevant part, held:

> We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government. Section 1605(a)(7) merely waives the immunity of a foreign state without creating a cause of action against it, and the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself.

<u>Id</u>. It should also be noted that Cicippio also specifically abrogates a number of district court decisions. <u>Cicippio</u>, in relevant part, held:

> . . . . some district court opinions in this circuit have held or assumed that the Flatow Amendment creates a cause of action against foreign states. *See Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) (holding that the Flatow Amendment provides a cause of action against a foreign state). *See also Regier v. Islamic Republic of Iran*, 281 F. Supp. 2d 87, 98-99 (D.D.C. 2003) (adopting *Cronin*'s reasoning that there is a cause of action against foreign states under the Flatow Amendment); *Kilburn v. Islamic Republic of Iran*, 277 F. Supp. 2d 24, 36-37 (D.D.C. 2003) (same).

<u>Id</u>. <u>Cicippio</u> also further held:

> Subsequent enactments by Congress providing for the payment or enforcement of judgments entered against foreign states in cases brought under § 1605(a)(7) fail to establish that Congress created a cause of action against foreign states. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub.L. No. 106-386, § 2002, 114 Stat. 1464, 1541-43; Terrorism Risk Insurance Act of 2002, Pub.L. No. 107-297, § 201, 116 Stat. 2322, 2337-39. As we explained in *Roeder,* these statutes merely provide for payment "*if* an individual has a judgment against Iran," but they do not address or resolve the anterior question "whether plaintiffs are legally entitled to such a judgment." 333 F.3d at 239 (emphasis added). It is entirely plausible

> for Congress to direct the United States to compensate victims of
> terrorism without purporting to establish or support a cause of action
> against foreign state sponsors of terrorism.

*Id*. at 1035.

The language of the Flatow Act is also clear in that it only creates a cause of action against "An official, employee, or agent of a foreign state . . . while acting within the scope of his or her office, employment, or agency ". 28 U.S.C. § 1605(a)(7) note. The act is clearly limited to individuals in their individual capacity. This position has also been confirm by the D.C. Circuit. The Court in Cicippio limited the causes of action which are created by the Flatow Act. The Court held:

> We also agree with the United States that, insofar as the Flatow
> Amendment creates a private right of action against officials,
> employees, and agents of foreign states, the cause of action is
> limited to claims against those officials in their *individual,* as
> opposed to their official, capacities.

*Id.*, at 1034.

The D.C. Circuit has also further stated, "it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states." *Id*., at 1036. In situations where "Congress has not expressly recognized" a cause of action against foreign states, courts should "decline to imply" one. *Id.* Accordingly, the Flatow Act does not create a private federal cause of action against Libya or the Jamahiriya Security Organization.

B.  GENERIC COMMON LAW CLAIMS DO NOT CREATE
    A PRIVATE CAUSE OF ACTION AGAINST LIBYA

Plaintiffs have asserted causes of action for survival damages, wrongful death, personal

13

injury, solatium, and intentional infliction of "Mental Distress".

The Court of Appeals, in <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004) specifically held that generic common law cannot be the source of a federal cause of action. The Court, in relevant part, held:

> [G]eneric common law cannot be the *source* of a federal cause of action. The shared common law of the states may afford useful guidance as to the rules of decision in a FSIA case where a cause of action arises from some specific and concrete source of law. *See Bettis*, 315 F.3d at 333 (assuming, *arguendo,* that plaintiffs stated a cause of action under the Flatow Amendment and then turning to generic common law to flesh out the controlling substantive law). But there is no support for the proposition that generic common law itself may furnish the cause of action. Rather, as in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law. (Emphasis added).

In <u>Bettis v. Islamic Republic of Iran</u>, 315 F.3d 325, 332 (D.C. Cir. 2003) the Court of Appeals also held that most Flatow Amendment cases have applied federal common law but then goes on to hold that the term is incorrect. <u>Bettis</u>, in relevant part, held:

> [F]ederal common law' seems . . . to be a misnomer. Indeed, it is a mistake, we think, to label actions under the FSIA and the Flatow Amendment cases arising under the FSIA . . . . as 'federal common law cases as these actions are based on *statutory* rights. Without the statute, the claims could not arise.

The Court should dismiss plaintiffs' complaint as they do not assert any state specific causes of action against Libya. Plaintiffs' complaint has stated the place of residence for Karin Gertrude Harris and Priscilla Alexandra Harris to be Berlin, Germany. The complaint does not indicate the state law on which the plaintiffs intend to rely upon for their state law causes of action and consequently they have failed to assert any causes of action upon which relied can be granted.

**CONCLUSION**

For the foregoing reasons, the Court should grant Libya's motion under Rule 12(b)(1) and (2), F. R. Civ. P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F.R.Civ.P., and dismiss the complaint for failure to state claims upon which relief can be granted. A proposed order is attached hereto.

Dated:       January 15, 2007                    Respectfully submitted,


                                                 //s//
                                                 Arman Dabiri
                                                 Law Offices of Arman Dabiri
                                                       & Associates, P.L.L.C.
                                                 1725 I Street, N.W.
                                                 Suite 300
                                                 Washington, D.C. 20006
                                                 Tel. (202) 349-3893
                                                 E-mail: armandab@worldnet.att.net

                                                 *Counsel for Libyan Government Defendants*