# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Katherine Harris, | : | |
| | : | |
| et al., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | CV 06-0732 (RWR) |
| | : | |
| v. | : | |
| | : | |
| SOCIALIST PEOPLE'S LIBYAN | : | |
| ARAB JAMAHIRIYA (Libya) | : | |
| | : | |
| et al. | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO THE EXPARTE MOTION FOR A 14 DAY STAY

Plaintiffs' motion for a 14 day stay is now moot based upon Defendants'

(hereinafter "Libya") Opposition filed at 5:30pm EST on June 15, 2007.  The very

conditions[1] however that justified the seven previous joint extensions of time to file[2] in this

case and the Clay case alone—the ongoing settlement discussions between the two

---

[1] The previous two stays were requested and granted because of the ongoing government-to-government talks. "Defendants filed a Motion to Dismiss Plaintiffs' complaint on January 15, 2007.  Plaintiffs and Defendants requested a 60 day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case.  The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26, 2007.
In order to provide time for the governments to conduct such talks, Plaintiffs and Defendants jointly request another stay in the case, which would extend Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss until May 26, 2007.  The stay will allow the court to conserve judicial resources that would otherwise be potentially squandered in the adjudication of a motion to dismiss in this case.  Therefore, in the interests of judicial economy, the parties jointly request a 60 day stay." Harris v. Socialist People's Libyan Arab Jamahiriya, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007)(RWR); Clay v. Socialist People's Libyan Arab Jamahiriya, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007)(RWR).

[2] The Parties agreed to five extensions of time for the Libyans to file their response to the Complaint and then the Parties agreed to two extensions of time for the Plaintiffs to file their Opposition to Libya's Motion to Dismiss.

governments—not only continue today, they are increasing in intensity.  Thus the justification for the 60 stay grows more acute and Plaintiffs believe judicial resources that would be otherwise squandered would be conserved by a 60 day stay.  Plaintiffs also file today a Fed. R. Civ. P. 6(b)(2) Motion to explain the expiration of the deadline of time to file an Opposition and request an extension and an Opposition to Libya's Motion to Dismiss to ensure full protection of their claims.

Libya advocates the least economical and most inefficient path for resolving this matter by opposing Plaintiffs' request to extend the stay for the case, which would have extended the deadline to file the Opposition to Libya's Motion to Dismiss.[3]  Furthermore, it makes no sense to force the Court to enter into an analysis of Libya's Motion to Dismiss when there are pending motions to enforce settlement in <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR), which, if granted, would likely result in a global settlement of all cases arising out of the Libyan bombing of the LaBelle Discotheque including <u>Harris v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-0732 (RWR) and its companion case, <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-0707 (RWR).

## PROCEDURAL BACKGROUND

On June 4, 2007 Plaintiffs requested Defendants' (hereinafter "Libya") consent to file a motion for a stay to extend the deadline to file Plaintiffs' Opposition to Libya's Motion to Dismiss.  Counsel for Libya replied he was without authority to answer the request; he would have to consult with the Libyan government before he could give counsel for Plaintiffs an answer and he would be traveling overseas for the next 6-7 days.  Plaintiffs therefore immediately filed the Ex Parte Motion for a Stay to bring the Court's attention to

---

[3] As the Libyans oppose the extension of the deadline to file the Opposition to the Motion to Dismiss, Plaintiffs file today a Fed. R. Civ. P. 6(b)(2) Motion to Extend the Time to File.

the matter.  On June 6, 2007, Plaintiffs sent an email to counsel for Libya repeating their request for Libya's position on the matter because the deadline had expired and it was important to resolve the matter expeditiously.

As the Court is aware the <u>Harris</u> case and <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, spring from the same events and contain the same Defendants but different plaintiffs as <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR), which has been stayed on several occasions while the parties in that case entered into settlement negotiations.  The Parties in the <u>Harris</u> case and <u>Clay</u> case have agreed to seven extensions of time to file in this case alone based upon the ongoing nature of the <u>Beecham</u> negotiations and Plaintiffs believed and continue to believe that Libya's Motions to Dismiss in this case and <u>Clay</u> are most efficiently and economically handled by staying these cases until the lead case is resolved.  Both sets of Plaintiffs in the <u>Beecham</u> case have filed Motions to Enforce the Settlement Agreement based upon the settlement negotiations between the parties in that case.  Counsel for Libya stated to counsel for Plaintiffs that any resolution of the <u>Beecham</u> claims would likely resolve this case and the <u>Clay</u> case. Otherwise, Plaintiffs in this case and <u>Clay</u> would not have agreed to seven extensions of time, all of which referenced the ongoing government-to-government talks that might resolve the case and obviate the need for the expenditure of judicial resources on a motion to dismiss.[4]

Rather than complete the meet and confer process as Counsel for Libya said he would during the June 4 phonecall, on June 15, 2007 Counsel for Libya finally answered Plaintiffs' June 4 request for consent by filing an Opposition to Plaintiffs' Ex Parte Motion

---

[4] This point is magnified when one reviews Libya's Motion to Dismiss in this case and the <u>Clay</u> case.  Every argument has already been expressly decided by either the DC Circuit or this Court in <u>Beecham</u>, expect for the Court's subject matter jurisdiction, which is mired in a jurisdictional discovery dispute.  See Section II. Plaintiffs' 6(b)(2) Motion for an Extension of Time, filed the same day as this Reply.

for a Stay.  Plaintiffs have therefore filed a Motion for an Extension of Time to File their

Opposition to Libya's Motion to Dismiss pursuant to Fed. R. Civ. P. 6(b)(2) the same day

as this Reply.  Had Libya joined in Plaintiffs' motion for a stay or extension of time to file

in the context of the ongoing government-to-government talks, as it had on seven prior

occasions, the Court would not be forced to waste its resources on an analysis of the Fed. R.

Civ. P. 6(b)(2) Motion and the Libya's Motion to Dismiss.

## THE GOVERNMENT-TO-GOVERNMENT TALKS CONTINUE

The express reason for the seven previous extensions, the government-to-

government talks, continues today.  Plaintiffs know that their government continues to press

the Libyan government to resolve the Labelle claims.  Assistant Secretary of State for Near

Eastern Affairs David Welch gave remarks to the House Foreign Affairs Committee during

a hearing on US foreign policy on North Africa, including Libya, as recently as June 6,

2007, on their commitment to continuing talks on the LaBelle claims.  In Secretary Welsh's

prepared remarks, he stated:  "[w]ith regard to the pending claims, those such as LaBelle

and Pan Am 103 have been at the top of our bilateral agenda both before and since the

reestablishment of direct relations.  Although the U.S. Government is not a party to any of

the cases pending against Libya, we have played an active role in ensuring Libya lives up to

its commitment to act in good faith with regard to their resolution."[5]  In Secretary Welsh's

testimony before the Committee, he stated:

> Resolution of the claims pending against Libya, such as those of the
> LaBelle claimants and of the Pan Am 103 Lockerbie claimants remains
> our most important objective.  Libya continues to reaffirm its commitment
> to respect any court judgments against it even as it pursues out-of-court
> settlements for some of these cases.

http://www.state.gov/p/nea/rls/rm/2007/86511.htm.  Counsel for Plaintiffs attended this

hearing and spoke to Secretary Welch who said he has already begun to organize another

meeting in his office for all counsel for Plaintiffs to develop a coordinated strategy with the

State Department for resolving the LaBelle claims against Libya.  Counsel anticipates being

involved in continuing discussions over the next several weeks regarding the LaBelle

claims and the crafting of an appropriate further US governmental response to Libya's

failure to honor the LaBelle settlement.  The response may also include punitive legislation

from Congress.

     During the June 6 hearing, the failure of Libya to honor the LaBelle settlement was

mentioned by the Chairman, the Ranking Minority Member and Secretary Welch in their

opening statements and questions and answers.  There is a universal recognition among

involved US government actors that Libya settled LaBelle and then reneged on that

commitment and that the US government now has to intercede.  The intercession will come

through further direct talks between the two governments and legislation from Congress.

     On the weekend of June 9, 2007 the undersigned counsel met with a Senate staffer

to give policy input on the draft legislation.   On June 15, 2007, Counsel was meeting

document requests in support of draft punitive legislation.  On the very day of the filing of

this Reply, Counsel gave input to both the Legislative Branch as it crafts punitive

legislation and the State Department as it develops its diplomatic options.

     At present, there is no unanimity among the United State government actors in

Congress and the Executive Branch as to the appropriate scope of sanctions legislation.

The range of items that appear to be under consideration are defunding of the planned US

embassy in Tripoli, a statutory bar on the exchange of ambassadors, restrictions on the

issuance of export licenses for dual use commodities, nuclear medicine technologies,

---

[5] http://foreignaffairs.house.gov/110/wel060607.htm

nuclear power plant related technologies and military weapons systems.  Governments

typically sort such decisions through extensive consultative processes.  The undersigned

anticipates he will be actively called upon to provide policy input to the US government

officials as they develop a unified US government response to Libya's bad faith, but makes

no predictions on the final form of the sanctions legislation.

## THE **BEECHAM** MOTIONS TO ENFORCE THE SETTLEMENT AGREEMENT

Libya's position is also wasteful because this case and the <u>Clay</u> case would be

resolved should the <u>Beecham</u> plaintiffs prevail in their Motion to Enforce the Settlement

Agreement.  Counsel for Libya stated to the undersigned that it is likely the <u>Harris</u> and <u>Clay</u>

claims would be subsumed in the <u>Beecham</u> settlement in the context of a discussion

regarding the settlement negotiations for <u>Beecham</u>.

There are two groups of claimants in <u>Beecham</u> -- both groups are composed of US

service personnel injured in the 1986 LaBelle Discotheque bombing attack by Libyan

agents and the family members of those who died as a result of the bombing.  Each group

filed a separate Motion to Enforce the Settlement Agreement on the basis of completed

settlement negotiations and Libya's refusal to compensate the claimants as required by the

agreement.

The first Motion to Enforce the Settlement Agreement was filed on August 7, 2006,

referred to Magistrate Judge Deborah Robinson on August 16, 2006 and briefing was

completed on December 29, 2006, although a short follow-on hearing was held by Judge

Robinson on May 29, 2007 to verify the inadmissibility of an affidavit submitted by Libya.

The second group of <u>Beecham</u> claimants filed a second motion to enforce the settlement

agreement on January 11, 2007.  The briefing for the second <u>Beecham</u> motion to enforce is

nearly complete as the Plaintiffs filed their closing argument on June 8, 2007.  All that

remains is Libya's closing argument and the second group of <u>Beecham</u> claimants' reply argument.

A stay would allow time for the resolution of the motions to enforce, which would avert a waste of the judicial resources.

**PLAINTIFFS HAVE REQUESTED AN EXTENSION OF TIME PURSUANT TO FED. R. CIV. P. 6(b)(2)**

Today Plaintiffs filed a Fed. R. Civ. P. 6(b)(2) Motion for an Extension of Time to File an Opposition to Libya's Motion to Dismiss and would have filed sooner had Counsel for Libya responded to Plaintiffs' inquiries, as he said he would during the June 4 phonecall.

While Plaintiffs believe the stay would have allowed two different and significant processes -- the motions to enforce in <u>Beecham</u> and the government-to-government talks -- that could resolve this case and the <u>Clay</u> case to proceed, Libya has chosen to oppose the stay. Libya also incorrectly analyses Local Rule 7 when Libya states the Motion to Dismiss must be granted: "[t]he rule require [sic] that the Court treat Libya's motion to dismiss as conceded by the plaintiffs due to their failure to file a timely opposition." (Libyan Opp. Mot. Stay p. 3). Local Rule 7 expressly states:

> Within 11 days of the date of service or such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, <u>the Court may treat the motion as conceded.</u>

(emphasis added). The Local Rule does not <u>require</u> the Court to grant Libya's Motion to Dismiss.

Plaintiffs timely filed a Motion for an Extension of Time to File pursuant to Fed. R. Civ. P. R. 6(b)(2) with their Opposition to Libya's Motion to Dismiss today. Should the Court disagree with Plaintiffs' arguments in favor of an extension, it will still examine

Libya's Motion to Dismiss, <u>Gov't Rels. Inc. v. Howe</u>, 2007 U.S. Dist. LEXIS 4952 at *22-23 (D.D.C. 2007); <u>Carver v. Bunch</u>, 946 F.2d 451, 455 (6th Cir. 1991); <u>Tiedel v. Northwestern Michigan College</u>, 865 F.2d 88, 91 (6th Cir. 1988). Even without the benefit of the Opposition, the Court will soon discover Libya's arguments have already been decided either by the D.C. Circuit of the Court itself in the <u>Beecham</u> case.

**CONCLUSION**

As there have been no changes to the circumstances that justified the seven previous consent stays or extensions to file, another 60 stay would be appropriate. Now that Libya has opposed a stay and an extension of the filing deadline for the Opposition, which has rendered the request for the 14 day stay moot, Plaintiffs filed a Motion 6(b)(2) for an extension on the first business day following notice of Libya's intent to oppose the extension of the stay.

Dated:  June 18, 2007                    Respectfully submitted,


                                         **/s/ Steven R. Perles_____**
                                         Steven R. Perles
                                         Perles Law Firm, PC
                                         1146 19th Street, NW, Fifth Floor
                                         Washington, DC  20036
                                         Telephone:  202-955-9055
                                         Telefax:  202-955-3806

                                         Counsel for Plaintiffs