# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Katherine Harris, et al., Plaintiffs<br><br>v.<br><br>SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA (Libya) et al.<br><br>Defendants | CV 06-0732 (RWR) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR FED. R. CIV. P. MOTION 6(b)(2) FOR AN EXTENSION OF TIME TO FILE AN OPPOSITION**

While it was Plaintiffs' sole responsibility to meet the filing deadline for the Opposition to Defendants' (hereinafter "Libya") Motion to Dismiss, there are strong grounds that completely justify an extension of time to file the Opposition under the governing test for "excusable neglect" found in Fed. R. Civ. P. 6(b)(2). The instant Motion arises out of what was anticipated to be the eighth consecutive joint request for a stay of proceedings while government-to-government settlement discussions continue. Plaintiffs expected the stay would be extended, as it had been seven times prior, as the conditions justifying the stay still exist. Plaintiffs presumed if Libya had a change of governmental policy during the previous stay and was no longer willing to extend the stay, Libya would have so noticed the Plaintiffs and that the Parties would have then worked out a briefing schedule for the Opposition to Libya's Motion to Dismiss by accommodation.

It is apparent that Libya misapprehends Local Rule 7 and believes its Motion to

Dismiss will be summarily granted if the Court denies the Motion for an Extension of time to file.  Even without the benefit of Plaintiffs' Opposition however the Court will examine the Motion to Dismiss and find that Libya's arguments have already been rejected by either the D.C. Circuit or by this same Court in the related case <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR).  Libya apparently believes it will be able to force this Court to render inconsistent decisions on identical questions of law based on identical pleading allegations raised in four pending, related cases.[1]

      Plaintiffs filed an Ex Parte Motion for a Stay on June 4, 2007 after being advised by Libya's Counsel that he was without authority to consent to a stay.  Counsel for Libya had stated he would ascertain his client's position and then advise as to the answer.  Plaintiffs sought to bring the matter to the immediate attention of the Court and to extend the stay that had expired on May 26, 2007 a further 14 days to allow Libya to respond to Plaintiffs' proposal to extend the stay for 60 days to allow the ongoing government-to-government talks to proceed.[2]  On June 6, Plaintiffs wrote an email again asking counsel for Libya for his client's position.  Counsel for Libya never communicated his client's position.  On June 15, 2007 Libya filed an Opposition to the Motion for a Stay.  Plaintiffs therefore request an extension of time to file their Opposition to Libya's Motion to Dismiss, which was due when the stay expired on May 26, 2007, which created a deadline to file on May 28, 2007.  Counsel is dismayed at Libya's June 15, 2007 Opposition to the Motion for a Stay and

---

[1] <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) consolidated with <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 02-cv-0639 (RWR), <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>,06-707 (RWR); <u>Harris v. Socialist People's Libyan Arab Jamahiriya</u>, 06-732 (RWR).

[2] Libya's Opposition renders the request for a 14 day stay moot.  While Plaintiffs still believe the 60 day stay is the most efficient disposition for this case and the Clay case, Plaintiffs attach their Opposition as an exhibit should the Court choose to forgo the stay and proceed to analyze Libya's Motion to Dismiss.

Libya's lack of a response to our two inquires about the stay, which resulted in the passing of several more days since the expiration of the deadline.

In the instant motion, filed on the first business day after Libya's only notice to Counsel that it would not join in the eighth consecutive request for a stay as anticipated, Plaintiffs respectfully move the Court pursuant to Fed. R. Civ. P. 6(b)(2) to allow an extension of time to file Plaintiffs' Opposition (attached as Exhibit A) on the date of the Court's Order.

## PROCEDURAL BACKGROUND

This case springs from the same set of events and includes the same defendants (but not the same Plaintiffs) as Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR).

The complaint in this case was filed on April 21, 2006 and the complaint and summons were served on July 6, 2006. Libya's initial deadline to respond was September 6, 2006. Libya thereafter requested Plaintiffs join them in a consent motion to extend their response time to October 6, 2006. Plaintiffs consented to the motion, which extended Libya's deadline to October 6, 2006, and the parties thereafter filed four joint requests to extend Libya's time to file a responsive pleading. The cumulative effect of these joint motions extended Libya's time to file until January 15, 2007.

Libya filed a Motion to Dismiss Plaintiffs' Complaint on January 15, 2007. On January 22, 2007, the Parties then filed a consent motion to stay the case for 60 days until March 26, 2007. Plaintiffs and Libya requested a 60 day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case. The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26,

2007.

As the Court is aware <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u> has been stayed on occasion while the Parties entered into settlement negotiations either directly or through government-to-government talks. On March 21, 2007, in order to provide further time for the governments to conduct such talks, Plaintiffs and Libya jointly requested another stay in this case, which extended Plaintiffs' time to file an opposition to Libya's Motion to Dismiss until May 26, 2007.[3] During this latest stay, as a result of the government-to-government talks, the Plaintiffs conducted direct discussions with representatives of the Libyan government. The State Department facilitated these meetings and witnessed almost every one of the sessions from April 16-24 and then again from April 26-27, sitting in as an official observer.

Because May 26 fell on a Saturday, the consent stay expired and the effective deadline of the time to file the Opposition was May 28, 2007. On Friday June 1, Counsel drafted a letter regarding the ongoing LaBelle claims for hand delivery to R. Nicholas Burns, Under Secretary, Political Affairs for the US State Department. Counsel for Plaintiffs realized the stay had expired on Friday June 1, 2007 as he drafted the letter for Secretary Burns and reviewed the various LaBelle claims in detail. Counsel was speaking at an academic legal and political conference on Monday, June 4, 2007 and knew Secretary

---

[3] The previous two stays were requested and granted because of the ongoing government-to-government talks. "Defendants filed a Motion to Dismiss Plaintiffs' complaint on January 15, 2007. Plaintiffs and Defendants requested a 60 day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case. The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26, 2007. In order to provide time for the governments to conduct such talks, Plaintiffs and Defendants jointly request another stay in the case, which would extend Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss until May 26, 2007. The stay will allow the court to conserve judicial resources that would otherwise be potentially squandered in the adjudication of a motion to dismiss in this case. Therefore, in the interests of judicial economy, the parties jointly request a 60 day stay." <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007)(RWR); <u>Harris v. Socialist People's Libyan Arab</u>

4

Burns would also be speaking at the conference. Counsel met with Secretary Burns on June 4, 2007, delivered the letter and the two made plans to meet in the future to further discuss the LaBelle claims.

On June 1, Counsel however mistakenly believed the expiration of the stay did not coincide with the expiration of the filing deadline for the Opposition. Counsel believed the expiration of the stay signaled only the need to extend the stay another 60 days or to request a briefing schedule for the Opposition. Looking back, Counsel believes his misunderstanding is partially attributable to our reading of the Court's Minute Order on April 3, 2007, which granted the March 21, 2007 consent request for a stay. The April 3 Minute order does not mention the expiration of a filing deadline, as had the Court before in its January 25, 2007 Minute Order that granted the Parties' January 22, 2007 request for a stay.

Counsel for Plaintiffs accepts blame for the passing of the deadline as it was Counsel who signed off on the March 21, 2007 consent request for a stay that explicitly called for the May 26, 2007 expiration of the filing deadline. Counsel wants to assure the Court that he does not mean to imply the Court was at fault in any way for the wording of the April 3 Minute Order, which was factually accurate. Counsel only wishes to elucidate the nature of his misunderstanding regarding the deadline for the Opposition and its relation to the stay. Counsel's original intention was to draft the consent motion to require a new briefing schedule for the Opposition upon the expiration of the stay and the consent motion's language that made the expiration of the stay contemporaneous with the expiration of the deadline to file was a mistake. When he checked the electronic docket to ascertain the status of the case during the month of May, he read the April 3 Minute Order and

---

Jamahiriya, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March

formed a reasonable belief that the stay expired on May 26, but the deadline for the Opposition did not.

Thus on Friday June 1, after Counsel realized the stay had expired, but failed to realize this meant the deadline for the time to file an Opposition was also implicated, he made plans to call counsel for Libya on the following workday, Monday June 4, to query whether the stay should be extended. Counsel considered what would have been the eighth consecutive stay or extension to be such a routine administrative matter that he tasked his associate to make the phonecall to Counsel for Libya. Had Counsel for Plaintiffs been aware that the deadline of the time to file had expired with the stay, he would have called Counsel for Libya himself. During the June 4 conversation with Counsel for Libya, he responded that he was without authority to consent, but also mentioned his consent might be complicated by the passing of the deadline to file the Opposition and said he would advise us as to his client's answer. Counsel for Libya was then asked whether he would consent to a 14 day stay to maintain the status quo ante while he contacted his clients. Again, Counsel replied he was without authority to respond. After the phonecall ended, Counsel for Plaintiffs then verified the deadline had passed and immediately drafted the ex parte motion for a temporary 14 day stay without waiting for Libya's consent in order to immediately bring the matter to the attention of the Court.[4] On June 5, 2007 counsel for Plaintiffs emailed Counsel for Libya to reiterate Plaintiffs' desire for a stay and requested Libya join them in the motion for a stay to push back the filing deadline for the Opposition. (See Exhibit B).

In Libya's Opposition to Plaintiffs' Ex Parte Motion for a Stay, Libya wishes to fault Plaintiffs for not yet filing a Fed. R. Civ. P. 6(b)(2) Motion for an Extension of Time

---

21, 2007)(RWR).

to File but Libya really seeks to capitalize on its own bad faith. Plaintiffs were waiting on counsel for Libya's promised return communication regarding Libya's position on extending the stay, which never occurred. Had Libya agreed to the extension the current exercise would be moot. Plaintiffs file their 6(b) motion on June 18, 2007, the first business day following the first notice from Libya that it would not be agreeing to the extension of the stay.

This case has been stayed throughout while government-to-government talks proceed with the aim of finalizing the Beecham settlement agreement, which would likely resolve this case. Today the government-to-government talks continue with the aim of settling all four pending, related cases resulting from Libya's bombing of the LaBelle discotheque in 1986. Thus the factor that justified the seven previous joint extensions of time to file remains in effect today.

Plaintiffs believe this matter should have been dealt with in the same collegial fashion as the parties have on seven previous occasions in this case, by working together to avoid unnecessary pleading and expenditure of the Parties' and the Court's resources to adjudicate issues that are under negotiation between the two governments. The question of the 14 day stay is now moot but the same reason—ongoing government-to-government talks—that justified the past seven extensions and stays remains and so Plaintiffs believe another 60 stay is in order. Plaintiffs file the instant motion to explain the expiration of the deadline, to gain an extension to file the Opposition to Libya's Motion to Dismiss and to ensure full protection of their claims.

---

[4] Counsel for Libya also notified counsel for Plaintiffs he would be traveling out of the country for the next 6-7 days.

I. **SHOULD THE MOTION FOR A STAY BE DENIED, PLAINTIFFS ARE ENTITLED TO AN EXTENSION TO FILE THEIR OPPOSITION DUE TO "EXCUSABLE NEGLECT"**

An extension is appropriate here because Plaintiffs, while acting in good faith, missed a filing deadline because ongoing government-to-government discussions intended to resolve all four of the pending, related LaBelle cases continue, had consented to seven previous deadline extensions without controversy, and the minor delay caused no prejudice to Libya and will not impact the judicial proceedings. Fed. R. Civ. P. 6(b)(2) provides for extensions of deadline to file pleadings when a party can demonstrate "excusable neglect."

> The Supreme Court addressed the meaning of "excusable neglect" in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993). The Court set forth factors to consider when determining what kind of neglect will be considered "excusable." These include: (1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.

In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (reviewing " . . . the district court's decision for abuse of discretion . . . ."). "Excusable neglect" is not a doctrine that should be applied rigidly against late-filers. "[I]t is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship, 507 U.S. 380, 392 (1993). The complete context within which the excusable neglect occurred must be evaluated prior to making granting or denying the Motion 6(b)(2). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . ." Id. at 395. Here the context is a case based upon events at issue in ongoing settlement discussions, which revolve around the settlement agreement, conducted either directly between the

8

parties or between the two governments, the fact of which led the Parties in this case alone to agree to seven extensions of time in the past 8 months. All of the relevant circumstances in this case lead to the conclusion that an extension of time is entirely reasonable and appropriate.

### A. LIBYA WILL NOT BE PREJUDICED BY AN EXTENSION

Libya has suffered no prejudice as a result of the minor delay and expected Plaintiffs to file an Opposition. The lack of prejudice to Libya is an important factor to consider. "In Pioneer, the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion." Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996). Prejudice to other parties, or lack thereof, is such an important factor under the Pioneer test that the D.C. Circuit has refused to overturn a district court finding that was based solely on the factor of prejudice. "Here, though without a formal finding of excusable neglect, the district court simply pointed to the lack of any prejudice to plaintiff and to the general preference for resolving cases on the merits." Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001) (upholding the district court's decision to grant an extension). Prejudice is not found where the only further effort required from Defendant will be to respond to a 6(b)(2) motion. If an extension would impose significant additional costs on the opposing party a court might find actual prejudice. Pigford v. Veneman, 307 F. Supp. 2d 43, 50 (D.D.C. 2004). Libya has suffered no prejudice in this case, especially where it already knows Plaintiffs' counsel intended to file an Opposition to Libya's Motion to Dismiss, what Plaintiffs arguments would be as Plaintiffs have already briefed an opposition to all of the same arguments from Libya, with one exception, in Beecham v. Socialist People's Libyan

9

Arab Jamahiriya and what the Court's ruling would be based upon D.C. Circuit opinions and the Court's rulings in Beecham.

In this case, Libya has always known it was Plaintiffs' intention to file an Opposition, hence the two consent motions to extend the time to file the Opposition. When the party requesting the extension to file has put the other part on notice of such intent, the notice mitigates the potential prejudice. Cryer v. Intersolutions, Inc., 2007 U.S. Dist. LEXIS 29241 at *19 (D.D.C. 2007). Libya were also contacted about the missed deadline on June 4, 2007 and were put on notice immediately that Plaintiffs were questioning whether a further stay would be appropriate versus the filing of an Opposition to the Motion to Dismiss. More importantly, the delay is utterly meaningless to Libya because the status of this case is tied inextricably to the disposition of the Motions to Enforce the Settlement Agreement in Beecham, presently pending before Magistrate Judge Deborah Robinson by direction of the Court.[5] Libya can not point to any further costs or negative effects on their litigation position that would result if the extension were granted.

---

[5] Libya's position is also wasteful because this case and the Clay case would be resolved should the Beecham plaintiffs prevail in their Motion to Enforce the Settlement Agreement. Counsel for Libya stated to the undersigned that it is likely the Harris and Clay claims would be subsumed in the Beecham settlement in the context of a discussion regarding the settlement negotiations for Beecham. There are two groups of claimants in Beecham -- both groups are composed of US service personnel injured in the 1986 LaBelle Discotheque bombing attack by Libyan agents and the family members of those who died as a result of the bombing. Each group filed a separate Motion to Enforce the Settlement Agreement on the basis of completed settlement negotiations and Libya's refusal to compensate the claimants as required by the agreement. The first Motion to Enforce the Settlement Agreement was filed on August 7, 2006, referred to Magistrate Judge Deborah Robinson on August 16, 2006 and briefing was completed on December 29, 2006, although a short follow-on hearing was held by Judge Robinson on May 29, 2007 to verify the inadmissibility of an affidavit submitted by Libya. The second group of Beecham claimants filed a second motion to enforce the settlement agreement on January 11, 2007. The briefing for the second Beecham motion to enforce is nearly complete as the Plaintiffs filed their closing argument on June 8, 2007. All that remains is Libya's closing argument and the second group of Beecham claimants' reply argument. A stay would allow time for the resolution of the motions to enforce, which would averted a waste of the judicial resources.

10

##   B.   THE EXTENSION WILL CAUSE ONLY A MINOR DELAY
##        WITH NEGLIGABLE IMPACT ON JUDICIAL RESOURCES

The period of delay has been minor.  The period of delay will have been days, rather than months.  The D.C. Circuit refused to overturn a decision to allow an extension of time for a two month delay, which was allowed as excusable neglect by the district court and also noted a decision that excused a month delay and a decision that frowned upon but did not reject a motion for a one year delay:

> In light of the difficulties, the delay period doesn't seem long in relation to the benchmarks of the rather limited set of cases (none of which, so far as we've discovered, involves comparable international distance complications). See, e.g., Bateman v. U.S. Postal Service, 231 F.3d 1220, 1225 (9th Cir. 2000) (finding excusable neglect when delay was over one month because plaintiff left country on a family emergency); cf. Smith v. District of Columbia, 368 U.S. App. D.C. 361, 430 F.3d 450, 456 n.5 (D.C. Cir. 2005) (noting that delay of "well over a year" militated against finding excusable neglect).

FG Hemisphere Assocs. v. Democratic Republic of Congo, 447 F.3d 835, 840 (D.C. Cir. 2006).  In another case, the passage of three months after a party became aware of a missed deadline had a negative impact on the party's request for an extension.  Howard v. Gutierrez, 474 F. Supp. 2d 41, 57 (D.D.C. 2007).

In this case, the filing deadline was effectively May 28, 2007 because May 26 fell on a Saturday.  Plaintiffs immediately moved to remedy the expiration of the stay on June 4, which was one week later.  At that time Counsel for Libya stated he would advise us of his client's position on the question of the stay but would be out of the country for 6-7 days.  Plaintiffs therefore immediately filed a motion for a 14 day stay to bring the matter to the Court's attention and bridge the gap of opposing counsel's travel schedule.  The 6(b) motion could not be properly framed until Counsel for Libya informed us of his client's position.

The period of time that has passed since the deadline to file an opposition to Libya's

11

Motion to Dismiss has not in any way compromised their case. "There is no showing, moreover, that this short-term delay would undermine Union Pacific's ability to advance its claim." Union Pac. R.R. Co. v. Progress Rail Servs. Corp., 256 F.3d 781, 783 (8th Cir. 2001). A lack of such a showing strongly supports Plaintiffs' extension request. Had Libya responded to either of Counsel for Plaintiffs' two inquiries[6] regarding Libya's position on the stay, Counsel for Plaintiffs would've filed their Fed. R. Civ. P. 6(b)(2) Motion for an Extension of Time to File an Opposition to Libya's Motion to Dismiss earlier than today, June 18, 2007, the first business day after Libya filed its Opposition to Plaintiffs' motion for a stay and the first day Plaintiffs knew of Libya's intent to not join in the consent motion for the renewal of the stay. Such a short delay does not compromise Plaintiffs' request for an extension.

### C.  PLAINTIFFS' COUNSEL HAS OPERATED IN GOOD FAITH

Plaintiffs' counsel has operated with good faith in this matter, which supports Plaintiffs' request for an extension. Plaintiffs' counsel moved immediately to bring this matter to the Court's attention as soon as he realized his error. When the party filing for an extension acts promptly to remedy the situation, this is considered evidence of good faith. "Finally, the Court finds that plaintiffs acted in good faith. As soon as plaintiffs learned of the decision in Howard, plaintiffs acted promptly to file their motion for extension of time." Cryer v. Intersolutions, Inc., 2007 U.S. Dist. LEXIS 29241 at *20-21 (D.D.C. 2007). Counsel was confused between the expiration of the stay and the deadline to file an

---

[6] Counsel for Plaintiffs contacted Counsel for Libya twice, by phone on June 4 and by email on June 5 to ask for Libya's position on the stay. (Exhibit B). On June 4, Counsel for Libya said he would check with his client and get back to us. Counsel for Plaintiffs never heard from Counsel for Libya until he read Libya's Opposition at the end of the business day on June 15. Plaintiffs have filed this Motion at the earliest possible date.

Opposition to the Motion to Dismiss, partially because the April 3 Minute Order on the electronic docket entry only referenced the expiration of the stay.[7]

Counsel for Plaintiff has met every filing deadline before the Court. Additionally, counsel for Plaintiffs in this case is also before the Court in two related cases: Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR) and Clay v. Socialist People's Libyan Arab Jamahiriya, 06-cv-707 (RWR). Counsel's exemplary history of meeting deadlines in a case is a factor to take under consideration. Counsel for Plaintiffs has not missed a single deadline in these three cases, including Beecham, which is nearly five and a half years old. By contrast, courts in other cases have found a history of abuse of filing deadlines would have a negative impact on the Pioneer analysis:

> Furthermore, the Court cannot help but question whether Plaintiff's delay was in good faith, considering Plaintiff's nearly unfailing pattern of untimely filing of documents over the course of his litigious history with this Court. In fact, in this very case, the Order and Opinion which Plaintiff seeks leave to appeal reflects Plaintiff's history of tardy filings, including failing to timely object to a report and recommendation. It is clear to the Court that Plaintiff places little stock in Court-mandated or rule-based deadlines, just as it is clear that he has not shown excusable neglect in his untimely filing of his Motion to extend the time in which to file a notice of appeal in the instant case.

Anyanwutaku v. Szego, 2006 U.S. Dist. LEXIS 42899 at *7-8 (D.D.C. 2006). Plaintiffs' counsel has no history of tardy filings in the cases before the Court, which advances Plaintiffs' request for an extension in this case.

### D. PLAINTIFFS' INNOCENT OVERSIGHT IS EXCUSABLE

Counsel for Plaintiffs has expended enormous efforts at furthering the LaBelle claims before, during and after the expiration of the filing deadline and missed the deadline because the underlying event at issue, the 1986 LaBelle Discotheque bombing, is the

---

[7] Counsel for Plaintiff reiterates that he does not mean to imply the Court is in any way at fault for the

subject of ongoing government-to-government talks, while the Parties had consented to seven previous deadline extensions without controversy. Counsel for Plaintiffs has not been inattentive to this case and continues to work with relevant US government actors in an effort to advance the LaBelle claims. A continuing expenditure of effort is evidence of counsel's good faith. "Moreover, Robb's attorneys continued to work on the case during the period in which Kus believed that the filing deadline had been extended (i.e., late December 1995 through January 8, 1996)." Robb v. Norfolk & Western Ry., 122 F.3d 354, 360 (7th Cir. 1997).

The government-to-government talks justified seven previous joint extensions of time to file in this case:

> Defendants filed a Motion to Dismiss Plaintiffs' complaint on January 15, 2007. Plaintiffs and Defendants requested a 60 day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case. The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26, 2007. In order to provide time for the governments to conduct such talks, Plaintiffs and Defendants jointly request another stay in the case, which would extend Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss until May 26, 2007. The stay will allow the court to conserve judicial resources that would otherwise be potentially squandered in the adjudication of a motion to dismiss in this case. Therefore, in the interests of judicial economy, the parties jointly request a 60 day stay.

Clay v. Socialist People's Libyan Arab Jamahiriya, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007)(RWR); Harris v. Socialist People's Libyan Arab Jamahiriya, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007)(RWR). The government-to-government talks continue today.

Plaintiffs know that their government continues to press the Libyan government to

---

wording of its Minute Order, which was factually accurate.

resolve the Labelle claims. Assistant Secretary of State for Near Eastern Affairs David Welch gave remarks to the House Foreign Affairs Committee during a hearing on US foreign policy on North Africa, including Libya, as recently as June 6, 2007, on their commitment to continuing talks on the LaBelle claims. "With regard to the pending claims, those such as LaBelle and Pan Am 103 have been at the top of our bilateral agenda both before and since the reestablishment of direct relations. Although the U.S. Government is not a party to any of the cases pending against Libya, we have played an active role in ensuring Libya lives up to its commitment to act in good faith with regard to their resolution."[8] In Secretary Welsh's testimony before the Committee, he stated:

> Resolution of the claims pending against Libya, such as those of the LaBelle claimants and of the Pan Am 103 Lockerbie claimants remains our most important objective. Libya continues to reaffirm its commitment to respect any court judgments against it even as it pursues out-of-court settlements for some of these cases.

http://www.state.gov/p/nea/rls/rm/2007/86511.htm. Counsel for Plaintiffs attended this hearing and spoke to Secretary Welch about the LaBelle claims. Counsel for Libya has represented to Counsel for Plaintiffs that the Harris and Clay claims will likely be folded into any global settlement of the LaBelle claims.[9] As the US government efforts are made to resolve the LaBelle claims entirely, anything else would be illogical.

While the factors that led to the passing of the deadline to file were fully within Plaintiffs' control, this does not bar the granting of an extension on the basis of excusable neglect. "For 'excusable' to have meaning, there must be a circumstance where failure to do that which was within ones control is later allowed by a court." Gilyard v. Northlake

---

[8] http://foreignaffairs.house.gov/110/wel060607.htm

[9] Another good reason to extend the stay can be found in Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR). In that case there are motions to enforce the settlement agreement between the Beecham claimants and the Libyan government. The resolution of these motions will be a critical factor in

15

Foods, Inc., 367 F. Supp. 2d 1008, 1011 (E.D. Va. 2005).  The complete set of circumstances surrounding the expiration of the stay and the time to file an Opposition to Libya's Motion to Dismiss strongly support the Court's granting of Plaintiffs' request for an extension of time to file the attached Opposition.

### II.     THE LIBYA'S MOTION TO DISMISS WILL FAIL EVEN IF UNOPPOSED

Even if both the Ex Parte Motion for a Stay is denied and the request for an extension of time to file is denied, the Court will evaluate Libya's Motion to Dismiss.

> However, while the Court shall not permit Plaintiff to file an Opposition to Plaintiff's Motion to Dismiss for the reasons set forth in Section Ill(B) of this Opinion, the Court shall not only grant Defendant's Motion to Dismiss as conceded, but also shall assess the Motion to Dismiss on the merits without the aid of an opposition. In so doing, the Court finds that on the merits, it shall grant Defendant's [18] Motion to Dismiss Plaintiff's Amended Complaint in its entirety.
>
> In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.

Gov't Rels. Inc. v. Howe, 2007 U.S. Dist. LEXIS 4952 at *22-23 (D.D.C. 2007); Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991); Tiedel v. Northwestern Michigan College, 865 F.2d 88, 91 (6th Cir. 1988).  Additionally, a closer examination of the motion to dismiss provides a further reason to grant the extension. The existence of a meritorious defense in this case is a factor that weighs in favor of the Court granting an extension under the Pioneer test.  FG Hemisphere Assocs. v. Democratic Republic of Congo, 447 F.3d 835, 842 (D.C. Cir. 2006).

---

the ongoing diplomatic and political effort to resolve all of the LaBelle claims.  Should the Beecham Plaintiffs prevail, this case will likely be resolved without utilizing the Court's resources on motions and discovery.

Libya's Motion to Dismiss consists entirely of a number of arguments that have already been rejected by the D.C. Circuit or this Court in its Orders of November 12, 2003 and March 31, 2007 Beecham v. Socialist People's Libyan Arab Jamahiriya, 01-cv-02243 (RWR). Libya's first argument, "Libya's Removal from the State Department List", (Mot. to Dismiss at p. 4-7), has been rejected by the DC Circuit three times, including two rejections of Libya's same argument on a motion for summary affirmance.[10] A motion for summary affirmance will only be granted where "the merits of the case are so clear that expedited action is justified," and "no benefit will be gained from further briefing and argument of the issues presented." Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051 (D.C. Cir. October 19, 2006). Thus the D.C. Circuit has twice certified the futility of Libya's argument that the removal of Libya from the State Department's State Sponsor of Terrorism List in 2006 would affect this Court's jurisdiction.

Libya's second argument, "Court lacks Subject Matter Jurisdiction Under Terrorism Amendment", (Mot. to Dismiss at p. 7-9), is based upon Libya's argument that Plaintiffs haven't provided any documentary evidence and Libya's characterization of Plaintiffs' detailed allegations in their complaint as "wild" and "ridiculous" Id. Libya has confused the burden of going forward. Libya filed a 12(b) motion to dismiss, which examines the allegations of the complaint, taken as true. The Court reviewed these same allegations when it reviewed a 12(b)(1) argument against the complaint in one of the four related case

---

[10] "28 U.S.C. § 1605(a)(7). This exception applies only if three additional criteria are also satisfied: the foreign state was designated a 'state sponsor of terrorism' at the time the act occurred; . . ." Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1126-1127 (D.C. Cir. 2004); Pugh v. Socialist People's Libyan Arab Jamahiriya, 2007 U.S. App. LEXIS 7830 at *3 (D.C. Cir. 2007) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was later removed from the list of state sponsors of terrorism."); Kilburn v. Islamic Republic of Iran, 2006 U.S. App. LEXIS 26051 at *2 (D.C. Cir. 2006) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was later removed from the list of state sponsors of terrorism.").

pending before this Court, <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR). The Court in <u>Beecham</u> described the allegations as " . . . dramatically specific, non-conclusory allegations in support of jurisdiction . . .which demonstrate Libya's involvement in the LaBelle bombing and would strip Libya of its foreign sovereign immunity." (November 13, 2003 Order at p. 13).

Libya concedes its third argument, "Court Lacks Personal Jurisdiction Over Libya", (Mot. to Dismiss at p. 9), has been rejected by the D.C. Circuit. <u>Price v. Socialist People's Libyan Arab Jamahiriya</u>, 294 F.3d 82 (D.C. Cir. 2002); <u>Rux v. Republic of Sudan</u>, 2005 U.S. Dist. LEXIS 36575 (E.D. Va. 2005).

Libya's fourth argument, "Punitive Damages Not Available", (Mot. to Dismiss at p. 9-11), and section A. of their fifth argument, "Flatow Amendment Does Not Create a Cause of Action", (Mot. to Dismiss at p. 11-13), are both supported by the DC Circuit in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024, 1034 (D.C. Cir. 2004), which Plaintiffs believe to be incorrect. The Court however in <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) has already agreed with Libya's argument based upon <u>Cicippio-Puleo v. Islamic Republic of Iran</u> and Plaintiffs will strike the Flatow Amendment claims from their complaint when the Court requires the filing of a conforming complaint as it has already done in <u>Beecham</u>.

Libya's last argument, "Generic Common Law Claims Do Not Create a Private Cause of Action Against Libya", (Mot. Dismiss at p. 13-15), based upon an incorrect reading of <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004), has been rejected by every court that has considered it. <u>See</u> <u>e.g.</u>, <u>Simpson v. Socialist People's Libyan Arab Jamahiriya</u>, 362 F. Supp. 2d 168, 182 (D.D.C. 2005) (rejecting Defendants' argument that a complaint that listed the torts of false imprisonment, intentional and/or negligent infliction

of emotional distress, assault, battery, loss of consortium and solatium, and loss of prospective inheritance did not state a claim upon which relief could be granted); Bodoff v. Islamic Republic of Iran, 424 F.Supp.2d 74, 78 (D.D.C. 2006) ("Courts have not construed the pleading requirements of Federal Rule of Civil Procedure 8 to require a plaintiff to recite specific source(s) of law in a complaint").  Libya's Motion to Dismiss does not present any new arguments for the Court to review nor does it present any arguments that have not been rejected by the D.C. Circuit or this Court in Beecham, aside from the Flatow Amendment claims that Plaintiffs sought to preserve.

Libya's Motion to Dismiss should accordingly be denied.

## CONCLUSION

Plaintiffs believe the Stay that expired on May 26, 2007 should be extended for another 60 days for the same reasons the two most recent stays were entered into.  Plaintiffs also request an extension under Fed. R. Civ. P. 6(b)(2) to file their Opposition to Libya's Motion to Dismiss, which was due at the expiration of the Stay on May 26, 2007.

An extension is appropriate where, as here, Plaintiffs while acting in good faith, missed a filing deadline while ongoing government-to-government discussions intended to resolve all four of the pending, related LaBelle cases continue, had consented to seven previous deadline extensions without controversy, and the minor delay caused no prejudice to Libya and will not impact the judicial proceedings.

Even if Libya's Motion to Dismiss is considered by the Court unopposed, the motion must fail because it consists entirely of a number of arguments that have already been rejected by the D.C. Circuit or this Court in its Orders of November 12, 2003 and March 31, 2007.

Dated: June 18, 2007                                   Respectfully submitted,


                                                       **/s/ Steven R. Perles**
                                                       Steven R. Perles
                                                       Perles Law Firm, PC
                                                       1146 19th Street, NW, Fifth Floor
                                                       Washington, DC  20036
                                                       Telephone:  202-955-9055
                                                       Telefax:  202-955-3806

                                                       Counsel for Plaintiffs