# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| Daryal V. Clay, | : | |
| | : | |
| et al., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | CV 06-0707 (RWR) |
| v. | : | |
| | : | |
| SOCIALIST PEOPLE'S LIBYAN | : | |
| ARAB JAMAHIRIYA (Libya) | : | |
| | : | |
| et al. | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FED. R. CIV. P. 6(b)(2) FOR AN EXTENSION OF TIME TO FILE AN OPPOSITION

Defendants' (hereinafter "Libya") Opposition, which is composed of conclusory contentions stated without the significant support of any case law, fails to meaningfully respond to the controlling precedent <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship</u>, 507 U.S. 380 (1993), or to respond at all to <u>In re Vitamins Antitrust Class Actions</u>, 327 F.3d 1207 (D.C. Cir. 2003) and <u>FG Hemisphere Assocs. v. Democratic Republic of Congo</u>, 447 F.3d 835 (D.C. Cir. 2006), all of which contradict Libya's conclusory contentions and support Plaintiffs' request for an extension of time to file their meritorious Opposition to Libya's Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 6(b)(2). Libya does not present any support for its conclusory contentions aside from further conclusory contentions.

Libya charges, without further explanation, that Plaintiffs' Memorandum in Support of an Extension consists "mostly of misstatements of fact." (Def. Opp. at 1). One would expect Libya to produce a counter-factual narrative to support such a serious charge. Yet in Libya's entire opposition, Libya only disputes one fact stated by Plaintiffs. Libya states

"there are no settlement negotiations specifically regarding the above captioned matter."

Def. Opp. at 2 n.1.[1]

This statement is misleading.  This case and <u>Harris v. Socialist People's Libyan Arab Jamahiriya</u>, 06-707 (RWR), wherein Plaintiffs mistakenly allowed the same deadline to respond to Defendants' Motion to Dismiss to lapse, are both cases brought against Libya for the bombing of the Labelle Discotheque in 1986.  Resolution of all the LaBelle claims is the subject of ongoing government-to-government talks between the governments of the United States and Libya.  (Plaintiffs' Mem. at 14-15).  For this precise reason, the Parties in this case by joint motion entered into two stays prior to this motion in the first three months of this year:

> Defendants filed a Motion to Dismiss Plaintiffs' complaint on January 15, 2007.  <u>Plaintiffs and Defendants requested a 60 day stay in order to analyze whether impending US-Libya government-to-government talks on the subject of the LaBelle Discotheque bombing might benefit the disposition of the case.</u>  The Court granted this request on January 25, 2007, which extended the due date for Plaintiffs' reply to March 26, 2007. In order to provide time for the governments to conduct such talks, Plaintiffs and Defendants jointly request another stay in the case, which would extend Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss until May 26, 2007.  The stay will allow the court to conserve judicial resources that would otherwise be potentially squandered in the adjudication of a motion to dismiss in this case.  Therefore, in the interests of judicial economy, the parties jointly request a 60 day stay.

<u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, Consent Motion to Stay the Case for 60 Days, ECF docket number 16 (filed March 21, 2007) (RWR) (emphasis added).

Libya can not now dispute the government-to-government talks have a significant impact on this case -- those talks are the very reason for the two previous jointly requested

---

[1] Libya also disputes a number of Plaintiffs' conclusions, such as whether Plaintiffs should have presumed Libya wanted another stay or would contact Plaintiffs' Counsel in advance of the expiration of the stay to discuss the propriety of another stay.  (Def. Opp. at 1-2).  Libya however does not dispute the underlying facts.  Plaintiffs do not disagree that Libya, under the Federal or Local Rules, was not obligated to act differently than it did as related in this motion.  Nonetheless Counsel for Plaintiffs was surprised at the sea change in Libya's behavior as the justification for the jointly requested stays has not changed.

stays.  Libya's Memorandum in Opposition conveniently failed to acknowledge that the

latest government-to-government talks, intended to resolve all pending LaBelle claims,

took place just two weeks ago and the discussions between the two governments are

continuing by telephone.[2]

I.    THE <u>PIONEER</u> TEST CONTROLS PLAINTIFFS' RULE 6(b)(2)
      MOTION FOR AN EXTENSION

On the principle issue in the motion for an extension, Libya's argument surprisingly

seems to rely on a quotation from <u>Pioneer</u> that supports Plaintiffs' request for an extension.

"[I]t is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is

not limited strictly to omissions caused by circumstances beyond the control of the

movant."  (Def. Opp. at 5) (quoting <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship</u>,

507 U.S. 380, 392 (1993)).  Indeed as the quotation-above points out, courts have the

discretion to grant requests for an extension under <u>Pioneer</u> where a deadline was missed due

to factors within the control of the late-filer.

Libya even seems to challenge the applicability of the Supreme Court's test for

excusable neglect enunciated in <u>Pioneer</u>:

> Plaintiffs also assert <u>incorrectly</u> that even if the motion for extension is
> denied they are entitled to an extension to file their opposition due to
> "excusable neglect".  In support for this <u>erroneous</u> assertion plaintiffs cite
> <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship</u>, 507 U.S. 380, 392
> (1993).

(Def Opp. at 4) (emphasis added).  Fed. R. Civ. P. 6(b)(2) makes it quite clear, however,

---

[2] Counsel for Plaintiffs continues to diligently represent the Plaintiffs in <u>Clay</u> and <u>Harris</u>.  Counsel met with State Department representatives to prepare for the government-to-government talks and received a de-briefing from the State Department after the recent government-to-government talks concluded.  Libya states "Plaintiffs needlessly waste time by recounting various contacts and communications with State Department officials. . . . it is necessary to remind plaintiffs that the Court is a separate branch of government. . . ."  (Def. Opp. at 5 n.3).  Libya seems to think Plaintiffs are implying that contacts with the State Department somehow substitute for filing an opposition with the Court.  Plaintiffs' contacts with the State Department are relevant for two reasons:  they manifest Counsel for Plaintiffs' good faith in continuing to represent his clients' interests before, during and after the events at issue in this motion under <u>Pioneer</u> and secondly they demonstrate the continuing government-to-government talks, which justified the previous stays.

that a request for an extension for time filed after the deadline has passed will be granted upon a showing of "excusable neglect," which the Supreme Court defined in Pioneer, and which was subsequently adopted by the D.C. Circuit.  "The Supreme Court addressed the meaning of 'excusable neglect' in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)."  In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209 (D.C. Cir. 2003).  Pioneer therefore controls the analysis of Plaintiffs' request for an extension under Rule 6(b)(2).

Libya does not otherwise address the Pioneer test that controls the analysis of "excusable neglect" under Rule 6(b)(2).  (Def. Opp. at 5).  The Pioneer factors include "the danger of prejudice to the debtor [the party opposing the filing], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship, 507 U.S. 380, 395 (1993). Libya has not contended that it has suffered any prejudice as a result of Plaintiffs' nine day delay.  Libya therefore must be conceding Plaintiffs' assertion that it has not suffered any prejudice.  (Plaintiffs' Mem. at 9-10).  On this finding alone Plaintiffs have made a sufficient argument to allow the Court to grant an extension for "excusable neglect" that would withstand the scrutiny of appellate review by the D.C. Circuit.  The D.C. Circuit has ruled a lack of prejudice alone, combined with a general preference for resolving cases on the merits, was sufficient to allow a district court to exercise its wide discretion to grant an extension for "excusable neglect."  Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001) ("Thus, given the great deference we owe district courts in what are effectively their 'case-management decisions,' there was no reversible error in the court's decision to accept Parker's late filing.").  The general preference for resolving cases

4

on the merits is especially keen in this case, where Libya's Motion to Dismiss consists entirely of arguments that have already been rejected by either the D.C. Circuit or this Court in its Orders of November 12, 2003 and March 31, 2007 in the related case <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR), except for Libya's argument regarding the Flatow Amendment claims.[3]  (Plaintiffs' Mem. at 16-19).

Plaintiffs in this case have also made uncontroverted arguments for each of the other <u>Pioneer</u> factors, which strongly support their request for an extension.  The length of delay has been much shorter than other courts have allowed.  <u>E.g.</u>, <u>Bateman v. U.S. Postal Service</u>, 231 F.3d 1220, 1225 (9th Cir. 2000) (delay of one month after a missed deadline on an opposition to a motion for summary judgment accepted as "excusable neglect"); <u>see also</u> <u>Howard v. Gutierrez</u>, 474 F. Supp. 2d 41, 57 (D.D.C. 2007) (denying a motion for an extension after a five-and-half month delay, finding the late-filer had therefore not acted diligently or in good faith).  In this case, there has been no impact on the judicial proceedings, which have been stayed from August 2006 until May 2007.  The minor length of the delay should be considered in this context.  The impact on the judicial proceedings has also been negligible where the case has been virtually frozen from August 2006 until May 2007.  Additionally, Counsel for Plaintiffs immediately filed a motion for a stay after he discussed the expiration of the stay with Counsel for Libya.  Counsel for Plaintiffs then sought to bring the matter to the attention of the Court after Counsel for Plaintiffs subsequently confirmed the deadline had passed on June 4, which was eight days[4] after

---

[3] The Court in <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) has already agreed with Libya's argument against the Flatow Amendment claims in the Complaint in this case, based upon <u>Cicippio-Puleo v. Islamic Republic of Iran</u>, and Plaintiffs will strike the Flatow Amendment claims from their complaint when the Court requires the filing of a conforming complaint as it has already done in <u>Beecham</u>.

[4] Libya counts nine days from the expiration of the deadline, May 26, 2007 to June 4.  (Def. Opp. at 2).  May 26 fell on a Saturday, so the effective date was actually May 28, as Libya concedes later in its Opposition.  (Def. Opp. at 3).  Only eight days passed from May 28 to June 4.  This might appear to be a minor

May 28, 2007 the effective date of the deadline that fell on May 26, a Saturday.   On June 4, Plaintiffs' motion for a stay stated the deadline to file their opposition had expired[5] but sought a stay to allow time for Counsel for Libya to contact his client to ascertain his client's position on a further stay.  One business day after Libya noticed the Court and Plaintiffs of Libya's opposition to the motion for a stay, Plaintiffs filed a request for an extension under Rule 6(b)(2).

Plaintiffs' Counsel has acted in good faith through his prompt actions subsequent to his realization the deadline to file an opposition had expired.  The words "bad faith" are noticeably absent from Libya's Memorandum in Opposition.  Libya might believe the extension isn't due on these facts, but Libya does not argue that Counsel for Plaintiffs is seeking to gain a tactical advantage by delaying the case and then seeking an extension.  Counsel for Plaintiffs has acted in good faith, moving to rectify his error as soon as he realized the deadline that had expired was for the filing of the opposition, and not the end of the joint stay.  <u>Howard</u>, 474 F. Supp. 2d at 57 (denying a motion for an extension after a five-and-half month delay, finding the late-filer had therefore not acted diligently or in good faith).  The only point Libya seems to challenge is the actual reason for the passing of the deadline.

---

discrepancy but is worth pointing out to the Court.  The important point is that Counsel for Plaintiff realized the stay had expired late on May 26 and called Counsel for Libya the next business day.  (Plaintiffs' Mem. at 4-5).  Counsel for Plaintiffs then realized the deadline for the Opposition had passed on June 4 and immediately filed a Motion for a Stay.  (Plaintiffs' Mem. at 6).  Once Libya filed its Opposition to Plaintiffs' Motion for a Stay on June 15, 2007, Plaintiffs filed a request for an extension on June 18, which was the next business day.

[5] "On March 21, 2007, in order to provide further time for the governments to conduct such talks, Plaintiffs and Defendants jointly requested another stay in this case, which extended Plaintiffs' time to file an opposition to Defendants' Motion to Dismiss <u>until May 26, 2007</u>."  <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, 06-707 (RWR) docket number 17, Ex Parte Motion for Stay, at p. 2 (filed June 4, 2007) (emphasis added).

Libya flatly states "Plaintiffs have not provided a single reason which would demonstrate excusable neglect", without referring to the controlling <u>Pioneer</u> factors or any other case law governing "excusable neglect". (Def. Opp. at 5). This unsupported statement ignores Counsel for Plaintiffs' explanation as to why he thought the May 26, 2007 deadline was an expiration of the stay, requiring another stay or a new briefing schedule. (Plaintiffs' Mem. at 4-6). Counsel for Plaintiffs believed the expiration of the stay had no further consequence than requiring another stay because of his office's misreading of the Court's Minute Order on April 3, 2007, which referenced the expiration of the stay and not that the opposition was due. The January 25, 2007 order and the April 3 order that granted the two previous joint requests for a stay while the government-to-government talks proceeded are written differently. The January 25, 2007 order reads:

> MINUTE ORDER: It is hereby ORDERED that the Consent Motion <u>15</u> to Stay the Case for 60 Days to 3/26/07 be, and hereby is, GRANTED. It is further <u>ORDERED that plaintiffs respond to defendants' motion to dismiss by 3/26/07</u>. Signed by Judge Richard W. Roberts on 1/25/07. (lcrwr3) (Entered: 01/25/2007)

(emphasis added). By contrast the April 3 order contains no express date for the filing of the memorandum in opposition and reads:

> MINUTE ORDER: It is hereby ORDERED that the Consent Motion <u>16</u> to Stay the Case to May 26, 2007 be, and hereby is, GRANTED. Signed by Judge Richard W. Roberts on 4/3/07. (lcrwr3) (Entered: 04/03/2007)

Counsel for Plaintiffs inadvertently allowed the deadline to pass because his office incorrectly understood the May 26, 2007 date as the expiration of the stay rather than the expiration of the filing deadline for the opposition. Counsel had anticipated that at the conclusion of the stay a new stay or a briefing schedule would be sought by accommodation as had been done on the previous seven occasions. This turned out not to be the case, was Counsel's error and he does not try to hide it.

The <u>Pioneer</u> test, however, allows for such mistakes upon a showing of good faith through timely actions taken to mitigate such mistakes by the late-filer. <u>In re Vitamins Antitrust Class Actions</u>, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (affirming a district court's decision to grant an extension where a late-filer missed a deadline due to reasons within his "reasonable control"); <u>Gilyard v. Northlake Foods, Inc.</u>, 367 F. Supp. 2d 1008, 1011 (E.D. Va. 2005) ("For 'excusable' to have meaning, there must be a circumstance where failure to do that which was within ones control is later allowed by a court."). Libya seems to be contending that the Court should employ a bright-line rule that would not allow extensions under Rule 6(b)(2) when a late-filer has made a mistake.

The D.C. Circuit recently rejected an argument for such a bright-line rule. When employing the <u>Pioneer</u> test, where a plain error results in a late filing, courts have granted an extension by balancing the mistake against the other <u>Pioneer</u> factors; such as a lack of bad faith by the late-filer. <u>E.g.</u>, <u>In re Vitamins Antitrust Litig.</u>, 2002 U.S. Dist. LEXIS 25790 (D.D.C. 2002) (<u>affirmed by</u> <u>In re Vitamins Antitrust Class Actions</u>, 327 F.3d 1207 (D.C. Cir. 2003).

In <u>In re Vitamins Antitrust Class Actions</u>, the D.C. Circuit reviewed the district court's decision to allow the modification of a final order approving a class settlement to allow a late-filer to opt out, despite his client's receipt of timely mailed notices. 327 F.3d at 1208-1209. The district court had entered an order certifying a settlement class, preliminarily approving the proposed settlement, and containing a plan for notifying class members of the settlement. <u>Id.</u> at 1208. The notices expressly stated that members would be bound by the settlement and could opt out by sending a written request postmarked before or on September 28, 2001. <u>Id.</u> at 1209. As planned, notices were mailed to the late-filer's client, at the same address to which prior notices elicited responses, and were also

posted online.  Id.  On November 30, 2001, the district judge approved the settlement.  Id.

The counsel for the late-filer discovered the expired deadline to file when he reviewed an

exhibit attached to the final order, on December 10, 2001, and saw that his client was not

listed among the class members who had timely opted out.  Id.  Two days later, counsel for

the late-filer filed a Motion to Modify the Final Order Approving the Class Settlement and

Final Judgment to allow his client to opt out of the settlement.  Id.  The district court

granted the motion for modification.  Id.

        The D.C. Circuit reviewed the district court's decision under the controlling Pioneer

test.  Id.  The party opposing the late-filing argued, as does Libya in this case, the late-filing

should be denied because it was due to an error within the control of the late-filing attorney.

Id.  The D.C. Circuit rejected this "per se rule that garden variety attorney inattention can

never constitute excusable neglect" and affirmed the district court's decision to allow the

late filing.  Id.  The D.C. Circuit affirmed the district court's decision that found the lack of

prejudice to the opposing party, the lack of bad faith on the part of the late-filer and the

short length of delay outweighed the late-filer's mistake.  In Clay and Harris, there is no

prejudice to Libya, the delay has been short particularly in the context of seven previous

consecutive stays and extensions that froze the case from August 2006 to May 2007, and

Plaintiffs' counsel has acted in good faith by immediately bringing the matter to the

attention of the Court after he discovered his error.

        In FG Hemisphere Assocs. v. Democratic Republic of Congo, the D.C. Circuit

reversed a district court's denial of a motion for an extension in a Foreign Sovereign

Immunities Act case.  447 F.3d 835, 840 (D.C. Cir. 2006) (finding short delay and lack of

bad faith important in its Pioneer analysis but relying on other factors not present within

this case).[6]  In <u>FG Hemisphere Assocs.</u> the D.C. Circuit cited to a Ninth Circuit opinion,

<u>Bateman v. United States Postal Serv.</u> to support the panel's analysis.  In <u>Bateman</u>, the

Ninth Circuit affirmed a district court's decision to allow a late filing by a plaintiff's

attorney who left the country for a family emergency despite his knowledge that the

opposing counsel had filed a motion for summary judgment that required a response while

the plaintiff's attorney would be out of the country.  <u>Bateman v. United States Postal Serv.</u>,

231 F.3d 1220, 1222-23 (9th Cir. 2000).  Nor did the plaintiff's attorney request an

extension from the court before the leaving the country, despite his knowledge that he

would be required to respond to the motion for summary judgment before his return to the

United States.  <u>Id.</u> at 1223.  Furthermore the plaintiff's attorney did not seek to address the

matter for sixteen days after returning to the country, despite the fact the deadline had

passed and the opposing counsel had filed papers to treat his motion for summary judgment

as unopposed.  <u>Id.</u>  The district court had entered summary judgment against the plaintiff in

the case but then set its judgment aside under the doctrine of "excusable neglect" after the

late-filer finally filed a request for an extension.  <u>Id.</u>  The Ninth Circuit applied the

controlling <u>Pioneer</u> test to evaluate the district court's finding of "excusable neglect" that

allowed it to grant the plaintiff's attorney's Fed. R. Civ. P. 60(b) motion and affirmed the

district court's decision.[7]  <u>Id.</u> at 1223-24.

      The Ninth Circuit affirmed the ruling below to allow a late filing and to rescind

---

[6] Libya seems to argue that the rules of procedure governing post-filing deadline requests for an extension are suspended in Foreign Sovereign Immunities Act ("FSIA") cases.  "Plaintiffs do not and can not cite a single case where an omission to file an opposition to an assertion foreign sovereign immunity (amongst other grounds) has not resulted in dismissal of the complaint."  (Def. Opp. at 6).  If Libya means to argue Rule 6(b)(2) or the controlling <u>Pioneer</u> test are, somehow, inapplicable in FSIA cases, the Court need look no further than FG Hemisphere Assocs. v. Democratic Republic of Congo, where the D.C Circuit applied the <u>Pioneer</u> test in the context of an omitted opposition in a FSIA case.  447 F.3d 835, 838 (D.C. Cir. 2006).

[7] The controlling <u>Pioneer</u> test for "excusable neglect" is the same for motions filed under 60(b) or 6(b).  <u>In re Vitamins Antitrust Class Actions</u>, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (finding the "excusable neglect" doctrine under both Rule 60(b) and Rule 6(b)(2) is governed by the <u>Pioneer</u> test).

summary judgment because there was little prejudice to defendants, the delay of filing the

Fed. R. Civ. P. 60(b) motion one month after the court entered summary judgment was

minimal, and while plaintiff's counsel made a plain error through "lack of regard for his

client's interests and the court's docket", there was "no evidence that he acted with anything

less than good faith. His errors resulted from negligence and carelessness, not from

deviousness or willfulness." Id. at 1224-25.  In this case, Libya has asserted no prejudice, a

delay of two weeks in the context of seven consecutive prior extensions and stays that froze

the case for over nine months is far less significant than the delay in Bateman of one month

after the court entered summary judgment, and there is no evidence of bad faith on the part

of Plaintiffs' counsel.  Furthermore Counsel for Plaintiffs immediately moved to contact the

Court after discovering his error, versus counsel in Bateman who knew about his error

prospectively yet did nothing for sixteen days after returning to the country.

     FG Hemisphere Assocs., 447 F.3d at 840, also cited Walter v. Blue Cross & Blue

Shield United of Wisconsin, 181 F.3d 1198 (11th Cir. 1999).  The Walter decision reversed

the district court's decision to deny a motion for an extension and found "excusable

neglect" under the Pioneer test where a secretary's clerical error resulted in a failure to

record a deadline, which was then missed. 181 F.3d at 1201-02.  See also Cheney v. Anchor

Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996).  The Cheney decision found

"excusable neglect" where a deadline was missed as a result of a secretary's failure to

communicate the deadline to the attorney.  "The nonfiling was simply an innocent oversight

by counsel. We find no bad faith that would warrant forfeiture of Cheney's right to a full

trial of his cause." Id.  In the Clay case, the deadline was mistakenly understood as the

expiration of the stay and not as the expiration of the deadline to file the opposition to

Libya's Motion to Dismiss, and so was not calendared as a deadline to file the opposition.

Again, there is no evidence or even an allegation of bad faith on the part of Plaintiffs'
counsel.

In Ramirez v. District of Columbia, the late-filer explained a missed deadline, by
twenty days, as a result of counsel's sickness and the resulting ten days of sick time, which
had a negative impact on her workload.  2000 U.S. Dist. LEXIS 6146 at *3-5 (D.D.C.
2000).

> Plaintiffs personally served their Second Set of Requests for Admission
> Under Rule 36 on February 18, 2000, thereby making defendants' answer
> due on March 20, 2000. The set contained 118 requests.
>
> Defendants did not timely respond to plaintiffs' Second Set of Requests for
> Admission. Therefore, on March 28, 2000, plaintiffs filed a Motion for an
> Order Deeming Certain Admissions in Plaintiffs' Second Set of Requests
> for Admission Be Admitted. Defendants filed their Motion to Extend their
> Time to Answer Plaintiffs' Second Set of Requests for Admissions along
> with their responses to plaintiffs' Second Set of Requests for Admission on
> April 10, 2000.

Id. at *1-3.  The district court granted the request for an extension regarding the missed
deadline because the plaintiffs could not assert any prejudice and there was a lack of bad
faith on the part of the late-filer.  Id. at *3-5.  In this case, the delay was eight days before
Counsel first realized the stay had expired and contacted Libya, Counsel filed a motion with
the Court the same day he fully realized the deadline for the opposition itself had passed,
and Counsel then filed the request for an extension one business day after Libya's first
notice that it would oppose any further extensions or stays.  Furthermore, Defendant has
suffered no prejudice, and Plaintiff has not acted in bad faith.

As described above, simple errors, such as bad record-keeping resulting in missed
deadlines, have been excused under the Pioneer test.  In Union Pac. R.R. Co. v. Progress
Rail Servs. Corp., the Eighth Circuit reversed a district court decision to deny under the
Pioneer test a Fed. R. Civ. P. 60(b) motion for relief from a default judgment filed by a late-

filer who had neglected to answer a complaint because the late-filer's legal department recorded the deadline incorrectly. 256 F.3d 781, 782 (8th Cir. 2001). The Eighth Circuit found the late-filer's "faulty record keeping" was a "single, simple error" and was "excusable neglect." Id. The late-filer promptly entered into negotiations regarding the default with the opposing party after learning of the default judgment, filed its 60(b) motion three-weeks after receiving notice of the default judgment and the delay did not prejudice the opposing party, even after the entry of a default judgment. Id. at 782-83. In this case, Counsel for Plaintiffs called Counsel for Libya as soon as he realized the stay had expired in order to address the situation, filed a request for a stay to bring the matter to the immediate attention of the court after he realized the deadline to file had expired, not only the stay. Counsel then filed a request for an extension under Fed. R. Civ. P. 6(b)(2), with an attached opposition to the motion to dismiss, the first business day after receiving a copy of Libya's Opposition to Plaintiffs' Request for a Stay.

A missed deadline as a result of a paralegal's misreading of a rule and calendaring a sixty day deadline in place of a thirty day deadline was excused in Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004) (en banc hearing). The en banc panel found even an "egregious" error of failing to read the correct rule could be excused under the Pioneer test when the other factors favored a finding of "excusable neglect." Id. at 858-860. A missed deadline as a result of misreading Fed. R. Civ. P. 6(a), which resulted in incorrectly counting a legal holiday was also excused in Gilyard v. Northlake Foods, Inc. 367 F. Supp. 2d at 1010. The court allowed an extension where plaintiff's counsel failed to file an opposition to a motion to dismiss on time. Id. The court found "excusable neglect" where plaintiff's counsel calendared the deadline to respond to the motion to dismiss incorrectly

after misapplying Rule 6(a) because of minimal prejudice and delay and a prompt response by the late-filer.  <u>Id.</u> at 1010-11.

Libya states that Plaintiffs have ignored the fact that they filed late.  (Def. Opp. at 2).  This is simply incorrect.  Plaintiffs stated in the first sentence of their Memorandum in support of Rule 6(b)(2) Motion that "it was Plaintiffs' sole responsibility to meet the filing deadline for the Opposition to Libya's Motion to Dismiss", thereby immediately identifying their mistake, the missed deadline, and requesting an extension to file the late Opposition. (Plaintiffs' Mem. at 1).  Plaintiffs do not argue it is anyone's fault that the deadline was missed but their own.  Under the controlling <u>Pioneer</u> test however, all of the mitigating facts are relevant.  "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship</u>, 507 U.S. 380, 395 (1993).  The relevant facts of this case include:

- the seven previous joint requests for a filing extension or consent request for a stay in this case and <u>Clay</u> froze the cases from August 29, 2006 until May 26, 2007;

- the previous handling of all scheduling matters by joint accommodation between counsel for the Parties;

- Defendant's explicitly-stated interest in staying the case while government-to-governments talks continue with the goal of resolving <u>all the LaBelle claims</u>;

- the ongoing nature of the government-to-governments talks referenced in the recent joint requests for a stay;

- and Counsel for Plaintiffs' prompt responses after his realization the stay had expired and then that the deadline to file the opposition had lapsed.

    Libya now incredibly argues as if there is no connection between the resolution of

the claims in this case and the <u>Beecham</u> case.  "[P]laintiffs transparent attempts to link the

above captioned case with the <u>Beecham</u> case pending before the District Court is

misplaced."  (Def. Opp. at 4).  This ignores the precise reason for the recent consent

requests for stays in this case.  Libya can not now pretend these talks do not affect these

proceedings or stand to potentially resolve the claims in this case entirely.

      Nor did Assistant Secretary of State for Near Eastern Affairs David Welch, one of

the key State Department officials who is participating in the government-to-government

talks, see a difference between this case and <u>Beecham</u> when he testified to a Congressional

committee about the ongoing talks.  Secretary Welch gave remarks to the House Foreign

Affairs Committee during a hearing on US foreign policy on North Africa, including Libya,

as recently as June 6, 2007, on the State Department's commitment to continuing talks on

the LaBelle claims.  "With regard to the pending claims, those such as LaBelle and Pan Am

103 have been at the top of our bilateral agenda both before and since the reestablishment

of direct relations.  Although the U.S. Government is not a party to any of the cases pending

against Libya, we have played an active role in ensuring Libya lives up to its commitment

to act in good faith with regard to their resolution."[8]  Secretary Welsh refers to all LaBelle

claims and does not differentiate between the <u>Beecham</u> case and this case as Libya seeks to

do in its Opposition.  In Secretary Welsh's testimony before the Committee, he stated:

> Resolution of the claims pending against Libya, such as those of the
> LaBelle claimants and of the Pan Am 103 Lockerbie claimants remains
> our most important objective.  Libya continues to reaffirm its commitment
> to respect any court judgments against it even as it pursues out-of-court
> settlements for some of these cases.

http://www.state.gov/p/nea/rls/rm/2007/86511.htm.  Furthermore, counsel for Plaintiffs has

met with State Department officials and confirmed the State Department agrees with the

---

[8] http://foreignaffairs.house.gov/110/wel060607.htm

need for a global settlement.  The United States' diplomatic objectives would not be fulfilled by a partial settlement.

## II.    THE DISTRICT COURT MUST INDEPENDENTLY ANALYZE PLAINTIFFS' OPPOSITION

Libya stridently misstates the applicable law regarding the relevance of the overwhelming case law in this Circuit stacked against Libya's Motion to Dismiss.  Libya quotes Federal Rule 6 and Local Rule 7(b) verbatim, but then misstates what Local Rule 7(b) says.  (Def. Opp. at 6).  Local Rule 7(b) states "If such a memorandum is not filed within the prescribed time, the Court <u>may treat</u> the motion as conceded."  (Emphasis added).  Libya argues the words "may treat" require dismissal of the Complaint, despite their plain meaning otherwise.   Libya also argues the Complaint should be dismissed without any analysis of Libya's Motion to Dismiss by the Court, which asserts only a single argument that hasn't been rejected by the D.C. Circuit or this Court in <u>Beecham</u>, ruling on an identical fact pattern and similar defenses that Libya raised in its motion to dismiss in that case.  (Plaintiffs' Mem. at 17-20).

Libya states the portion of Plaintiffs' memorandum that reviews the ample case law that has rejected <u>every</u> defense in Libya's Motion to Dismiss, save for the Flatow Amendment claims, is "nonsense" and "a waste of four pages."  (Def. Opp. at 6).  Libya tellingly does not offer a substantive response to this portion of Plaintiffs' memo and simply misstates the <u>binding law of the Circuit</u> on this issue.  The D.C. Circuit recently ruled that pre- and post-<u>Pioneer</u> cases <u>require</u> late filers to offer an argument on the merits to justify an extension.  <u>FG Hemisphere Assocs. v. Democratic Republic of Congo</u>, 447 F.3d 835, 842 (D.C. Cir. 2006); <u>see also</u> <u>Union Pac. R.R. Co. v. Progress Rail Servs. Corp.</u>, 256 F.3d 781, 783 (8th Cir. 2001) ("We have also concluded that 'the existence of a

meritorious defense continues to be a relevant factor' . . . [f]inally, Progress Rail has evidently acted in good faith and has posited a defense that on its face appears to have considerable merit.").  The D.C Circuit ruled in <u>FG Hemisphere Assocs.</u> that the existence of a meritorious defense, as exists in this case, is a factor that must be investigated and weighs in favor of the Court granting an extension under the <u>Pioneer</u> test.  447 F.3d at 842. The D.C. Circuit analyzed the defenses offered by the late-filer to conclude the late-filer would in fact prevail.  <u>Id.</u>  In this case, acceptance of Libya's Motion to Dismiss would force this Court to render inconsistent decisions on identical questions of law based on identical pleading allegations raised in four pending, related cases, as well as ignore mandatory precedent from the D.C Circuit.  <u>See</u> <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, 2007 U.S. App. LEXIS 7830 at *3 (D.C. Cir. 2007) (rejecting Libya's first argument, "Libya's Removal from the State Department List", (Mot. to Dismiss at p. 4-7)); <u>Price v. Socialist People's Libyan Arab Jamahiriya</u>, 294 F.3d 82 (D.C. Cir. 2002) (rejecting Libya's third argument, "Court Lacks Personal Jurisdiction Over Libya", (Mot. to Dismiss at p. 9)).

Libya goes on to cite <u>United States v. Real Prop. Identified As Parcel 03179-005R</u>, 287 F. Supp. 2d 45 (D.D.C. 2003), a case that does not refute Plaintiffs' argument that Libya's Motion to Dismiss, even if unopposed, will be analyzed by the Court and dismissed under rulings by the Court in <u>Beecham</u> and the D.C. Circuit.[9]  (Def. Opp. at 7).  While the court in <u>Real Prop. Identified As Parcel 03179-005R</u>, stated it did not have to "belabor" the issue of whether plaintiff was an "innocent owner" because the no-moving party for summary judgment did not address the issue, the court then recited the applicable law and

---

[9] <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 01-cv-02243 (RWR) consolidated with <u>Beecham v. Socialist People's Libyan Arab Jamahiriya</u>, 02-cv-0639 (RWR), <u>Clay v. Socialist People's Libyan Arab Jamahiriya</u>, 06-707 (RWR); <u>Harris v. Socialist People's Libyan Arab Jamahiriya</u>, 06-732 (RWR).

analyzed the available record to see whether there was evidence the plaintiff was an innocent owner. Id. at 61 ("as Mrs. Howard did not testify at her husband's trial, there is no basis upon which the Court could ascertain whether or not she has a valid argument that she is an innocent owner for purposes of the statute's exemption."). The critical fact that distinguishes Real Prop. Identified As Parcel 03179-005R from this case is that the late-filer there did not request an extension to file counter-arguments to the unopposed argument analyzed by the court.

More recent decisions have also independently analyzed the issue under Local Rule 7(b). In each of these cases, despite the fact the late-filer failed to even file a request for an extension, the court independently examined the merits of the unopposed argument. Doe v. Goss, 2007 U.S. Dist. LEXIS 2708 at *34-35 (D.D.C. 2007) (independently analyzing the case law on a question raised by the movant for summary judgment but which the opposing party failed to respond to); Hornbeck Offshore Transp., LLC v. United States Coast Guard, 2006 U.S. Dist. LEXIS 14389 at *72 (D.D.C. 2006) ("Second, upon an independent analysis of the evidence presented and relevant case law, the Court concludes that the Agency's exhaustion argument is meritorious."); Glenn v. Williams, 2006 U.S. Dist. LEXIS 8687 at *39-40 (D.D.C. 2006) ("[m]oreover, upon an independent analysis of the evidence presented and relevant case law, the Court concludes that Defendant's argument is meritorious . . ."); Day v. D.C. Dep't of Consumer & Regulatory Affairs, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) (independently analyzing whether the allegations in a complaint made out a claim under Fed. R. Civ. P. 12(b)(6) even though the plaintiff had failed to refute the opposing party's argument).

More importantly, the D.C. Circuit's decision in FG Hemisphere Assocs. requires an analysis of the merits at least as a deciding factor under the Pioneer test. FG Hemisphere

<u>Assocs. v. Democratic Republic of Congo</u>, 447 F.3d 835, 842 (D.C. Cir. 2006) (analyzing whether the late-filer had a meritorious defense as a factor under the <u>Pioneer</u> test).

## CONCLUSION

Plaintiffs have demonstrated "excusable neglect" under the controlling <u>Pioneer</u> test, which would allow the Court to grant Plaintiffs' request for an extension filed under Fed. R. Civ. P. 6(b)(2).  An extension is appropriate where, as here, Plaintiffs while acting in good faith, allowed a filing deadline to pass while ongoing government-to-government discussions intended to resolve all four of the pending, related LaBelle cases continue, had consented to seven previous deadline extensions without controversy, and the minor delay caused no prejudice to Libya and will not impact the judicial proceedings.

Plaintiffs' misunderstanding of the Court's Minute Order on April 3, 2007 constitutes a mistake that is analogous to error found to be "excusable neglect" in numerous other decisions and Plaintiffs have acted in good faith in immediately bringing the matter to the Court's attention.

The Court is required to independently examine the grounds for dismissal raised by Libya in its Motion to Dismiss in its <u>Pioneer</u> analysis because Plaintiffs have a meritorious defense supported by D.C. Circuit precedent and ruling by this Court in its Orders in <u>Beecham</u> of November 12, 2003 and March 31, 2007.

Should the Court nonetheless deny Plaintiffs' request for an extension under the <u>Pioneer</u> doctrine of "excusable neglect" then it has the discretion to independently examine the grounds for dismissal raised by Libya in its Motion to Dismiss because it consists entirely of a number of arguments that have already been rejected and result in inconsistent judgments in related cases filed on the same fact patterns.

The Court should grant Plaintiffs' request for an extension under Fed. R. Civ. P.

6(b)(2), deem the Opposition to Libya's Motion to Dismiss, which attached as an Exhibit to

Plaintiffs' Memorandum filed in support of their request for an extension, filed and set a

due date for Libya's Reply memorandum.

　　　　Plaintiffs respectfully request an oral hearing before the Court.


Dated:  July 9, 2007                    Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　__/s/ Steven R. Perles_____
　　　　　　　　　　　　　　　　　　　　　Steven R. Perles
　　　　　　　　　　　　　　　　　　　　　Perles Law Firm, PC
　　　　　　　　　　　　　　　　　　　　　1146 19th Street, NW, Fifth Floor
　　　　　　　　　　　　　　　　　　　　　Washington, DC  20036
　　　　　　　　　　　　　　　　　　　　　Telephone:  202-955-9055
　　　　　　　　　　　　　　　　　　　　　Telefax:  202-955-3806

　　　　　　　　　　　　　　　　　　　　　Counsel for Plaintiffs