# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Katherine Harris, | : |
| et al., | : |
| Plaintiffs | : |
| v. | : CV 06-0732 (RWR) |
| SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA (Libya) | : |
| et al. | : |
| Defendants | : |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
## BASED UPON CHANGE IN CONTROLLING LAW
## AND FOR AN EXPEDITED DENIAL OF
## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 15(a), Plaintiffs hereby move the Court for leave to amend their complaint based upon a change in controlling law and to expeditiously deny Defendants' Motion to Dismiss. On January 28, 2008 Congress recently amended the Foreign Sovereign Immunities Act ("FSIA") and created a viable and uniform claim for damages under federal law by passing the National Defense Authorization Act for Fiscal Year 2008. Pub. L. No. 110-181, § 1083 (2008). ("Defense Authorization Act"). Section 1083 of that Act amends the Foreign Sovereign Immunities Act by deleting 28 U.S.C. § 1605(a)(7), which was previously known as, the "state sponsored terrorism" exception to sovereign immunity, and under which this case was brought, and replacing it

with 28 U.S.C. § 1605A. (Exhibit 1). The Defense Authorization Act is explicitly retroactive:

> (c) Application to Pending Cases-
> (1) IN GENERAL- The amendments made by this section shall apply to any claim arising under section 1605A of title 28, United States Code.

(Exhibit 2 at p. 5-6).[1] This case now arises under 28 U.S.C. § 1605A[2] and the retroactivity provision applies to it.

The immediately relevant effects of the Defense Authorization Act upon this case are:

- Plaintiffs may now utilize a statute-based, federal private right of action against the foreign state itself;

- as part and parcel of that federal private right of action against the foreign state itself, Plaintiff may now pursue punitive damages against Defendants, including the foreign state itself;

- Defendants' statute of limitations defense, which was improperly raised for the first time in their Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, has been conclusively overridden by the explicit language of the Defense Authorization Act; and

- Defendants no longer have a right to a collateral order doctrine appeal.

(Exhibit 2).

---

[1] In Exhibit 2, Plaintiffs provide the Court with a copy from www.thomas.loc.gov of the pertinent section of the Engrossed Bill that was presented to the President for signature on January 24, 2008 and signed on January 28, 2008. Pub. L. No. 110-181, § 1083 (2008). A "stat." citation number had not been provided by the Government Printing Office at the time of this filing.

[2] One example of the changes wrought by the new statute is that section 1605(a)(7) has been deleted from Title 28 and replaced with 28 U.S.C. § 1605A.

Plaintiffs' initial complaint originally requested damages under the Flatow Amendment, a federal private right of action that allowed damages, including punitive damages, against the foreign state itself. *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Complaint, docket number 1, at p. 8-10 (D.D.C. April 21, 2006). The Defense Authorization Act has recreated the Flatow Amendment at 28 U.S.C. § 1605A(c), expanding the scope of allowable defendants to include the foreign state itself and expanded the scope of allowable damages to include the foreign state itself. The Act therefore directly affects the Court's resolution of the pending Defendants' Motion to Dismiss and requires the filing of an amended complaint.

## BACKGROUND

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress amended the FSIA to create a judicial forum for adjudicating the claims of victims of terrorist acts committed by foreign states that the Department of State has designated as state sponsors of terrorism. Pub. L. No. 104-132, § 221, 110 Stat. 1241 (1997). AEDPA created the "state-sponsored terrorism exception" to the sovereign immunity that is ordinarily enjoyed by foreign states under the FSIA. 28 U.S.C. § 1605(a)(7). Under AEDPA, countries officially designated by the Department of State as terrorist states can be held liable for personal injuries or deaths if the foreign state commits a terrorist act, or provides material support and resources to an individual or entity that commits such an act. *Id*.

After the passage of AEDPA, Congress addressed the issue of remedies for plaintiffs in these cases. A provision called "Civil Liability for Acts of State-Sponsored Terrorism" was enacted on September 30, 1996 as part of the 1997 Omnibus

3

Consolidated Appropriations Act, Pub. L. No. 104-208, § 589, 110 Stat. 3009 (1997); commonly referred to as the "Flatow Amendment". The Flatow Amendment established the measure of damages available in suits under the "state-sponsored terrorism" provision of the FSIA.

Empowered by this legislation, Americans brought rogue states, including Iran, Libya and Syria, to our courts in redress of damages resulting from their sponsorship of horrific acts. This crucial congressionally-mandated authority was intended to assure that foreign states, otherwise immune from litigation, would be treated as ordinary litigants, having the same rights and obligations as any other party properly before a United States Article III Court. *See* 28 U.S.C. § 1606.

Then, in the case of *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033-34 (D.C. Cir. 2004), the United States Circuit Court of Appeals for the District of Columbia terminated the right of American victims of terrorism to sue the foreign state sponsors of terrorism under the Flatow Amendment.  "[T]he Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself." *Id.* The appellate court gutted the legislative scheme by limiting damages to the individual, and presumably judgment proof, terrorists rather than permitting judgment directly against the foreign sovereign that sponsored acts of terrorism.

Finally, a great number of US citizens have earnestly pressed forward their claims in an attempt to find some justice at the expense of the foreign states that murdered or injured them, only to find that the foreign states are blessed with an unusual procedural advantage in federal litigation. In the usual litigation process, a party in litigation is

4

rarely able to take an interim or interlocutory appeal of a court's decision until the matter has concluded, as appeals are usually deferred until after the trial has ended or the court enters an order of summary judgment or dismissal. Collateral order doctrine appeals and interlocutory appeals are narrow exceptions to this rule that allow parties to take an appeal on decisions that cannot be left to the conclusion of the matter. The exceptions allowing these special appeals are narrow in order to ensure an efficient judicial process by conserving precious judicial resources that would otherwise be wasted by litigants who would delay the progress of the case by appealing every decision by a trial judge. Because of loopholes in the FSIA however foreign governments had been exploiting one of these narrow exceptions, the collateral order doctrine appeal, to achieve delay after delay.

Congress has acted to remedy these problems and to clarify other statutory ambiguities that have been interpreted by the courts over the years since 1996 in ways that have handicapped 28 U.S.C. § 1605(a)(7) claimants. Congress's solution is immediately relevant to this case because Defendants have filed a Motion to Dismiss that argued there is no private right of action against the foreign state itself and that punitive damages are not available. *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Motion to Dismiss, docket number 14, at p. 9-13 (D.D.C. January 15, 2007). Defendants further filed a reply that argued Plaintiffs had not filed within the applicable statute of limitations, which was inappropriately raised for the first time in a reply brief. *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Reply Memorandum to Plaintiffs' Opposition to Motion to Dismiss, docket number 24, at p. 2-4

(D.D.C. September 26, 2007). These arguments are explicitly overruled by the retroactive application of the Defense Authorization Act.

## I. THE COURT SHOULD ALLOW LEAVE TO AMEND THE COMPLAINT AS A RESULT OF THE CHANGE IN CONTROLLING LAW

Plaintiffs should be allowed to amend their Complaint to reflect the change in the pertinent law. A party may amend its pleadings with the consent of opposing counsel or "when justice so requires." Fed. R. Civ. P. 15(a). This standard is fulfilled when the amendment is based upon a change in law. *See e.g., Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999). Leave for such amendments "shall be freely given":

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). None of the above-mentioned factors, which support a denial of a request to amend through Fed. R. Civ. P. 15(a), exist in this case. Plaintiffs should be allowed to amend their complaint to reflect the changes in the controlling law.

## II. DEFENDANTS' MOTION TO DISMISS SHOULD BE EXPEDITIOUSLY DENIED

The arguments contained in Defendants' Motion to Dismiss have either been rejected by prior rulings by this Court or the D.C. Circuit or now have been overruled by

6

Congress in the Defense Authorization Act. As Plaintiffs demonstrated in their Opposition to Defendants' Motion to Dismiss, *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Plaintiffs' Opposition to Motion to Dismiss, docket number 23, at p. 15-28 (D.D.C. September 19, 2007), Defendants arguments have all been overruled by this Court or the DC Circuit, with the exception of two arguments:

- whether Plaintiffs have the right to punitive damages; and
- whether Plaintiffs have the right to a federal cause of action.

Defendants' arguments have now been explicitly overruled by Congress in the new state sponsorship of terrorism exception found at 28 U.S.C. § 1605A and created by the Defense Authorization Act.

### A. PRIOR TO THE PASSAGE OF THE NEW STATUTE, ALL BUT TWO OF DEFENDANTS' ARGUMENTS FOUND IN THEIR MOTION TO DISMISS HAVE BEEN REJECTED BY THIS COURT OR THE D.C. CIRCUIT

Libya's Motion to Dismiss consists entirely of a number of arguments that have already been rejected by the D.C. Circuit or this Court in its Orders of November 12, 2003 and March 31, 2007 entered in *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 01-cv-02243 (RWR). Libya's first argument, "Libya's Removal from the State Department List", (Mot. to Dismiss at p. 5-7), has been rejected by the DC Circuit three times, including two rejections of Libya's same argument on a motion for summary affirmance.[3] A motion for summary affirmance will only be granted where "the merits

---

[3] "28 U.S.C. § 1605(a)(7). This exception applies only if three additional criteria are also satisfied: the foreign state was designated a 'state sponsor of terrorism' at the time the act occurred; . . ." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126-1127 (D.C. Cir. 2004); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 2007 U.S. App. LEXIS 7830 at *3 (D.C. Cir. 2007) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign

of the case are so clear that expedited action is justified," and "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam); *Kilburn v. Islamic Republic of Iran*, 2006 U.S. App. LEXIS 26051 (D.C. Cir. October 19, 2006).  Thus the D.C. Circuit has twice certified the futility of Libya's argument that the removal of Libya from the State Department's State Sponsor of Terrorism List in 2006 would affect this Court's jurisdiction.

Libya's second argument, "Court lacks Subject Matter Jurisdiction Under Terrorism Amendment", (Mot. to Dismiss at p. 7-9), is based upon Libya's argument that Plaintiffs haven't provided any documentary evidence and Libya's characterization of Plaintiffs' detailed allegations in their complaint as "wild" and "ridiculous" *Id.*  Libya has confused the burden of going forward.  Libya filed a 12(b) motion to dismiss, which examines the allegations of the complaint, taken as true.  The Court reviewed these same allegations when it reviewed a 12(b)(1) argument against the complaint in one of the four related cases pending before this Court, *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 01-cv-02243 (RWR).  The Court in *Beecham* described the allegations as " . . . dramatically specific, non-conclusory allegations in support of jurisdiction . . .which demonstrate Libya's involvement in the LaBelle bombing and would strip Libya of its foreign sovereign immunity."  (November 13, 2003 Order at p. 13).

---

immunity, even though it was later removed from the list of state sponsors of terrorism."); *Kilburn v. Islamic Republic of Iran*, 2006 U.S. App. LEXIS 26051 at *2 (D.C. Cir. 2006) ("Because Libya was designated as a state sponsor of terrorism at the time the alleged acts occurred, it is not entitled to sovereign immunity, even though it was later removed from the list of state sponsors of terrorism.").

8

Libya concedes its third argument, "Court Lacks Personal Jurisdiction Over Libya", (Mot. to Dismiss at p. 9), has been rejected by the D.C. Circuit. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002); *Rux v. Republic of Sudan*, 2005 U.S. Dist. LEXIS 36575 (E.D. Va. 2005).

Libya's fourth argument, "Punitive Damages Not Available", (Mot. to Dismiss at p. 9-11), and section A. of their fifth argument, "Flatow Amendment Does Not Create a Cause of Action", (Mot. to Dismiss at p. 11-13), are both supported by the D.C. Circuit in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1034 (D.C. Cir. 2004), which Plaintiffs believe to be incorrect. These arguments have now been overruled by Congress as described below. (*Infra* Section II. B-D).

Libya's last argument, "Generic Common Law Claims Do Not Create a Private Cause of Action Against Libya", (Mot. Dismiss at p. 13-15), based upon an incorrect reading of *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004), has been rejected by every court that has considered it. *See e.g.*, *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 168, 182 (D.D.C. 2005) (rejecting Defendants' argument that a complaint that listed the torts of false imprisonment, intentional and/or negligent infliction of emotional distress, assault, battery, loss of consortium and solatium, and loss of prospective inheritance did not state a claim upon which relief could be granted); *Bodoff v. Islamic Republic of Iran*, 424 F.Supp.2d 74, 78 (D.D.C. 2006) ("Courts have not construed the pleading requirements of Federal Rule of Civil Procedure 8 to require a plaintiff to recite specific source(s) of law in a complaint"). Libya's Motion to Dismiss does not present any new arguments for the Court to review nor does it present any arguments that have not been rejected by the D.C. Circuit or this Court in *Beecham*, aside

9

from the private federal right of action claims that Plaintiffs sought to preserve.

Libya's Motion to Dismiss should accordingly be denied.

### B. A NEW FEDERAL PRIVATE RIGHT OF ACTION IS NOW AVAILABLE AGAINST THE FOREIGN STATE ITSELF, WHICH INCLUDES PUNITIVE DAMAGES

The Defense Authorization Act has codified a federal statutory right to a uniform set of damages for claimants in lawsuits previously brought under 28 U.S.C. § 1605(a)(7) and those maintained under 28 U.S.C. § 1605A:

> Private Right of Action- A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to--
> `(1) a national of the United States,
> `(2) a member of the armed forces,
> `(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or
> `(4) the legal representative of a person described in paragraph (1), (2), or (3),
> for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and <u>punitive damages</u>. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

(Exhibit 2 at p. 2-3) (emphasis added).  As seen above, the scope of available damages includes punitive damages.

The Defense Authorization Act is explicitly retroactive:

> (c) Application to Pending Cases-
> (1) IN GENERAL- The amendments made by this section shall apply to any claim arising under section 1605A of title 28, United States Code.

(Exhibit 2 at p. 5-6).

The Defense Authorization Act overrules two of Defendants' arguments from their Motion to Dismiss. Defendants' Motion to Dismiss argued there is no private right of action against the foreign state itself and that punitive damages are not available. *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Motion to Dismiss, docket number 14, at p. 9-13 (D.D.C. January 15, 2007). The section cited above conclusively provides otherwise.

### C. DEFENDANTS' STATUTE OF LIMITATIONS DEFENSE IS PRECLUDED BY THE EXPLICIT WORDING OF THE NEW STATUTE

This case was brought within the newly applicable statute of limitations:

> Limitations- An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of--
> `(1) 10 years after April 24, 1996; or
> `(2) 10 years after the date on which the cause of action arose.

(Exhibit 2 at p. 2). Defendants filed a reply that argued Plaintiffs' had not filed within the applicable statute of limitations, which was inappropriately raised for the first time in a reply brief. *Harris v. Socialist People's Libyan Arab Jamahiriya*, CA06-732 (RWR), Reply Memorandum to Plaintiffs' Opposition to Motion to Dismiss, docket number 24, at p. 2 (D.D.C. September 26, 2007). This case however was filed on April 21, 2006, or prior to 10 years after April 24, 1996, which brings the case within the applicable statute of limitations, cited above.

**D. LIBYA'S ABUSE OF COLLATERAL ORDER DOCTRINE APPEALS IN *BEECHAM* AND OTHER CASES BROUGHT UNDER THE STATE SPONSOR OF TERRORISM EXCEPTION HAS RESULTED IN AN ABSOLUTE STATUTORY BAR AGAINST THE TAKING OF SUCH APPEALS**

The Defense Authorization Act has abrogated the right of foreign sovereigns to a collateral order doctrine appeal to test a decision based upon their subject matter jurisdiction.  28 U.S.C. § 1605A(f); (exhibit 2 at p. 3).  Foreign sovereigns now must seek certification of interlocutory appeals under 28 U.S.C. § 1292(b).

The right of parties in litigation in US federal court to take an appeal is set forth in 28 U.S.C. § 1291.  A "final decision of the district court" is the necessary predicate to trigger the parties' right to an appeal.  The policy that animates this requirement is the "strong congressional policy against piecemeal reviews, and against obstructing or impeding ongoing judicial proceeding by interlocutory appeal".  The Supreme Court expanded the definition of a "final decision" in *Cohen v. Beneficial Indus. Loan Corp.*, to include important decisions made by the trial court on issues collateral to the final resolution of the case yet important enough to warrant immediate review rather than waiting until the end of the case.  337 U.S. 541 (1949).  Different from an interlocutory appeal, collateral order doctrine appeals, are taken as a matter of right, before a final decision in the case is made.  In contrast, an interlocutory appeal is only taken if the appeal is certified by the trial judge before it may be lodged as an appeal at the appellate court.  28 U.S.C § 1292(b).  The certification requirement reduces the incentive to take frivolous appeals in an effort to delay the progress of the case.

Up until this point, courts have categorized orders in FSIA cases that pierce a foreign sovereign's immunity as "final orders" and have allowed foreign sovereigns to take *Cohen* doctrine or collateral order doctrine appeals for such decisions.

> Although 28 U.S.C. § 1291 limits this court's review to "final decisions of the district court," under the collateral order doctrine a decision of the district court is deemed "final," and therefore reviewable, if it: "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 121 L. Ed. 2d 605, 113 S. Ct. 684 (1993). Further, "it is well-established that an appeal from a denial of a motion to dismiss a complaint on the ground of sovereign immunity under the FSIA satisfies the three requirements of the collateral order doctrine." Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 325 U.S. App. D.C. 117, 115 F.3d 1020, 1025 (D.C. Cir. 1997); see Kilburn v. Socialist People's Libyan Arab Jamahiriya, 363 U.S. App. D.C. 87, 376 F.3d 1123, 1126 (D.C. Cir. 2004).

*Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C. Cir. 2004). In FSIA cases, the ability of the foreign sovereign to take a collateral order doctrine appeal, without the certification required for an interlocutory appeal, at any time during the case, as opposed to having to wait until the end of the trial, has given the foreign sovereign an easy method to drag out the case for years and years.[4]

Congress has acted to end this abuse. The Defense Authorization Act states: "Appeal- In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title." 28

---

[4] One of the more egregious examples of abuse of the collateral order doctrine came when the Socialist People's Libyan Arab Jamahiriya appealed a district court order that required the parties to meet and "confer and submit a joint jurisdictional discovery plan as a prelude to actual discovery." *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 424 F.3d 1109, 1111 (D.C. Cir. 2005) (the *Beecham* case arises from the same set of facts as this case and includes the same Defendants). The Court of Appeals found that the appeal was "several steps removed" from its jurisdiction. *Id.* at 1112. Despite the frivolousness of the appeal, the Socialist People's Libyan Arab Jamahiriya was able to delay the case over 20 months before it returned to the district court.

13

U.S.C. § 1605A(f); (exhibit 2 at p. 3). Appeals taken under 28 U.S.C. § 1292(b) require certification by the district court judge that the disputed "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."

The Defense Authorization Act forecloses Defendants' ability to take a collateral order doctrine appeal in this case. An explicitly retroactive jurisdictional provision contained within a new federal statute affects the jurisdiction of even appeals pending at the time of the legislation's passage. *See e.g.*, *Balogun v. United States Attorney General*, 425 F.3d 1356, 1359-60 (11th Cir. 2005). In *Balogun*, the appellate court observed that their jurisdiction over the appeal had historically been precluded by federal statute:

> Before May 11, 2005, our review of this decision would have been limited. Section 1252(a)(2)(C) of the immigration statutes provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)." . . . . That all changed on May 11, 2005 when the President signed into law the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, Pub. L. No. 109-13, 119 Stat. 310 (2005). That appropriations act contains an unrelated, but important, division titled the "REAL ID Act." . . . . These jurisdiction restructuring provisions are retroactively applicable to all pending proceedings regardless of the date of the final administrative order.

*Id.* at 1359-60. In *Balogun*, the new, intervening federal statute created jurisdiction to allow the appeal to be heard. *Id.* at 1360. The application of the Defense Authorization Act in this case therefore forecloses Defendants' right to take a collateral order doctrine appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant leave to amend their Complaint and to deny Defendants' Motion to Dismiss.

Dated:  January 31, 2008                    Respectfully submitted,

 

<u>**/s/ Steven R. Perles**</u>
Steven R. Perles
Perles Law Firm, PC
1146 19th Street, NW, Fifth Floor
Washington, DC  20036
Telephone:  202-955-9055
Telefax:  202-955-3806

Counsel for Plaintiffs