# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Karin Gertrude Harris on her own behalf and on behalf of the estate of Lorenzo Alexander Harris<br><br>et al.<br><br>    Plaintiffs<br><br>  v.<br><br>SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA (Libya)<br><br>et al.<br><br>    Defendants | : : : : : : : : : : : : : : : : : : : | **AMENDED COMPLAINT**<br>CV 06-0732 (RWR) |

## AMENDED COMPLAINT

1. This action is brought by the Plaintiff Karin Gertrud Harris, in a representative capacity and in an individual capacity, and by Priscilla Alexandra Harris by counsel, for personal injuries, as more particularly described herein, for their own benefit, for the benefit of the estate of Lorenzo Alexander Harris, and for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act (28 United States Code Section 1602 et. seq.), the federal private right of action thereunder (28 U.S.C. § 1605A(c)), Pub. Law. No. 110-181 § 1083, and the statutory and state law of the state of residence listed above and of the District of Columbia.  This Court exercises subject matter jurisdiction in accordance with the provisions of 28 United States Code Sections 1330(a), 1331, 1332(a)(2), and 1605A.  The Court exercises in personam jurisdiction over the parties

      designated as Defendants in accordance with the provisions of 28 United States Code Section 1605A.

2. The proper venue for this action is in this Court in accordance with the provisions of 28 United States Code § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

3. Lorenzo Alexander Harris, a United States citizen who was at the time of the occurrence, a reserve member of the Armed Forces of the United States. Karin Gertrud Harris was Lorenzo Harris' wife and is the executor of his estate. Priscilla Alexandra Harris was Lorenzo Harris' minor daughter at the time of the attack and his subsequent death. Lorenzo Alexander Harris was at the discothèque at the time of the attack and suffered permanent breathing abnormalities. He died four years later as a result of this physical injury. At the precise time of the events hereinafter described which gave rise to this litigation, this person was not engaged in any official activity on behalf of the United States and was in attendance at the LaBelle Discotheque in Friednauer, in metropolitan Berlin, Germany. Friednauer, at the time of the occurrence, was within the American Zone of Berlin. It was widely known to be frequented by Americans, particularly servicemen who were off duty.

4. On April 5th, 1986 a bomb exploded within the LaBelle Discotheque resulting in the deaths of three persons, including two Americans, and injuries to an additional 230 other people.

5. The attack on April 5, 1986 on the LaBelle Discotheque was carried out upon the direction of Colonel Muammar Abu Minar al Qadhafi, de facto chief of government of the Defendant, the Socialist People's Libyan Arab Jamahiriya (Libya). Libya is a

        foreign state that was designated a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, from December 29, 1979 until 2006, and during the time of the attack as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

6. Libya, acting by and through its officials, employees and agents, both known and unknown, committed the terrorist acts which are set forth in this Amended Complaint and provided material support and resources to the perpetrators of the terrorist acts which are set forth in this Amended Complaint. Libya caused Plaintiffs' injuries and supported the perpetrators, within the meaning of 28 U.S.C. § 1605A, by providing them with funding, planning, direction, and training for their terrorist activities. The attack itself was carried out by persons associated with the Libyan secret intelligence service, the Jamahiriya Security Organization (JSO), including JSO member Musbah Abulgasem Eter.

7. This direct support and assistance was engaged in by an officials, employees, and/or agents of Libya while acting within the scope of their office, employment, or agency. They were assisted by Yasser Mohammed Chreidi, a Palestinian and a member of the Abu Nidal Organization (ANO), a terrorist group receiving financial support and assistance from Libya. Agents of Libya physically located in East Berlin supplied the explosives used to carry out the attack. Germans, known as Verena C. and Ali C., who were members of a Libyan sponsored terrorist group, concealed the bomb in a purse and placed it within the discotheque.

8. Intelligence sources intercepted communications from Muammar Abu Minar al Qadhafi to the JSO ordering that terrorist acts be carried out resulting in the LaBelle

discotheque bombing. In furtherance of this planned attack a Libyan intelligence service courier transported sub-machine guns, hand grenades and approximately 12 kg of explosives from Tripoli to East Berlin as diplomatic luggage. On April 4, 1986, in preparation of the terrorist attack, Souad Chraidi transported approximately 3 kg of plastic explosive loaded with iron parts, a detonator and a delay timing device (timer) from the Libyan embassy in East Berlin to the apartment of Ali and Verena Chanaa in West Berlin.

9. On April 4, 1986 at around 9:00 p.m. Yasser Chraidi, Ali Chanaa, Verena Chanaa and Eter made the final preparations for the terrorist attack at which time the detonator and timer were fitted into the explosive. The explosive was concealed in a bag. After this, Eter said, "This is the answer to the Americans, a gift from Gadhafi to Reagan."

10. At around 11:00 p.m. Verena Chanaa and Andrea Häusler brought the bomb to be detonated into the "LaBelle" discotheque, where the electrical delay timing device of the explosive was activated. The bag containing the bomb was placed at a seat in the center of the dance floor. On April 5, 1986 at around 1:35 a.m. Verena Chanaa and Andrea Häusler left the "LaBelle" discotheque. There were approximately 260 people in the discotheque at the time.

11. The bomb exploded with great and destructive force at approximately 1:40 a.m. Three persons – Kenneth Terence Ford, James E. Goins, and Nermin Haney, a female Turkish citizen – were killed. The explosive pressure tore off Mr. Ford's genitals, and separated his left lower-leg and his left arm from the trunk of his body. He sustained severe burns on his face and body. He died of shock and loss of blood. Both of Mr. Goins' lower-legs were ripped open and his bones shattered. Metal

parts of the bomb penetrated his body and he sustained severe burns on his face and body. Despite an emergency operation, in which both legs were amputated, he later died from his injuries. Nermin Haney had her left eye torn out and her left lower-leg cut to pieces by the explosion. She bled to death at the scene. At least 229 persons suffered severe personal injuries as a result of the bomb explosion. The explosion would have killed everyone present in the discotheque but for the fact that the explosion blasted out the interior walls and collapsed the dance floor so that the victims fell into a cellar.

12. Both before and after the terrorist bomb attack on the "LaBelle" discotheque, the telex communications between the Libyan intelligence service switchboard in Tripoli and the Libyan embassy in East Berlin records that officials, employees and agents of Libya and JSO were responsible for the planning, preparation and execution of this terrorist act. Immediately after this terrorist bomb attack, the Libyan embassy in East Berlin sent a message to the Libyan government that execution of this terrorist act had been carried out successfully. The communication stated that "... at 1:30 early this morning the performance of one of the actions took place with success, without leaving behind any clues..."

13. In April 1986 Major General John H. Mitchell was the United States Commander in Berlin. He received secret national defense information from reliable sources. He learned that before the "LaBelle" bomb attack, instructions had been sent from the Libyan government in Tripoli to the Libyan People's Office in East Berlin to perform terrorist attacks against Americans and that the Libyan People's Office in East Berlin communicated to the Libyan government in Tripoli immediately after the bomb attack that the operation had been successfully performed.

5

14. On September 10, 1996, Eter visited the German embassy in Malta. During questioning in the presence of the German ambassador, Eter made a detailed confession by disclosing the planning, preparation and execution of the terrorist attack on "LaBelle;" his own actions; and the actions of the other perpetrators, as set forth above. During further questioning conducted by the senior state prosecutor in Berlin, Eter described in detail the execution of the "LaBelle" terrorist act by officials, employees and agents of Libya and JSO.

15. On March 17, 2001, Al Qhaddafi, in a secret meeting in Tripoli, Libya, admitted to Mr. Steiner, the foreign policy adviser to German Federal Chancellor Schröder, Libya and he (Al Qhaddafi) participated in the terrorist bomb attack at the "LaBelle" discotheque as well as the "Lockerbie" terrorist act. On March 29, 2001, at a meeting in Washington, D.C. between the leaders of Germany and the United States, Mr. Steiner reported to President George W. Bush, Secretary of State Colin Powell, and National Security Advisor Condoleezza Rice these admissions of Al-Qhaddafi.

16. At no time, prior to the attack on the LaBelle discotheque patrons, did a state of war or other status of belligerency exist between the United States of America and Libya. American military personnel were therefore by definition non-combatants in accordance with recognized principals of American and international law. Therefore, the injury and death inflicted upon Plaintiff's decedent was inflicted upon him for the purpose of intimidating the United States and influencing its foreign policy. The actions performed by Libyan agents, employees, and officials while within the scope of their office during the conspiracy to bomb the discotheque constitute, attempted extra-judicial killing, "torture" and the provision of "material

6

support or resources"[1] for the aforementioned, as required by 28 U.S.C. § 1605A. Such actions further constitute tortious, illegal and criminal actions under international law, United States law, the laws of the state of their permanent residence and District of Columbia law.

17. Lorenzo Alexander Harris, is a national of the United States in accordance with the provisions of 28 U.S.C. § 1605A.

18. The Jamahiriya Security Organization (JSO), is an agency of Libya and the Libyan secret intelligence service. The Abu Nidal Organization (ANO) is a terrorist group, which, at the time of the occurrence, received financial assistance, training and technical advice from Libya. Agents of Libya operating in East Berlin supplied the explosives used in the attack. The attack was carried out by Libyan agents, officials, and employees at the direction of Colonel Muammar Abu Minar al Qadhafi. The Libyan agents, officials, and employees were therefore acting within the scope of their office, employment, or agency.

19. Karin Gertrud Harris and Priscilla Alexandra Harris asserts that they are entitled to judgment on these counts pursuant to 28 U.S.C. § 1605A(c) and the applicable laws, common law or statutory law, of the state where each plaintiff and/or decedent was domiciled at the time of the incident at issue in this case.

## COUNT I – ACTION FOR SURVIVAL DAMAGES

(Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris)

(under state common and statutory law and 28 U.S.C. § 1605A(c))

20. Plaintiff Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris, repeats, realleges and incorporates by reference

---

[1] As defined by 18 U.S.C. § 2339A.

7

those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

21. From the time of the attack until before his death, Lorenzo Alexander Harris suffered permanent physical injury and physical suffering and mental anguish and suffering, entitling his estate to compensatory damages.

22. Defendants Libya and JSO are directly and/or vicariously responsible for the actions of their co-defendants and agents.

**WHEREFORE,** Plaintiff Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris demands that judgment be entered, jointly and severally, against Defendants in the amount of **TWENTY MILLION ($20,000,000.00) US Dollars** on this count**,** and their costs expended.

### COUNT II
### Claim for Wrongful Death
(Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris)

(Under state common law and 28 U.S.C. § 1605A(c))

23. Plaintiff Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

24. Lorenzo Alexander Harris' death was caused by a willful and deliberate act of extra judicial killing and torture organized planned and facilitated by Defendants Libya and JSO and their agents during the course of their terrorist act of bombing the discotheque.

WHEREFORE, Plaintiff Karin Gertrud Harris as the Executrix and Successor in Interest of the Estate of Lorenzo Alexander Harris demands judgment against the

Defendants, Libya and the JSO, jointly and severally, in the amount of TWENTY MILLION DOLLARS ($20,000,000.00), plus costs.

### COUNT III
### Claim of Karin Gertrud Harris and Priscilla Alexandra Harris for Personal Injury, Solatium and Intentional Infliction of Mental Distress
(Under state common law and 28 U.S.C. § 1605A(c))

25. Plaintiffs, Karin Gertrud Harris and Priscilla Alexandra Harris, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

26. As a direct and proximate consequence of the actions of the Defendants, as aforesaid, Plaintiffs Karin Gertrud Harris and Priscilla Alexandra Harris, suffered severe emotional injuries as a result of the outrageous and intentional conduct of the defendants resulting in great pain and emotional trauma and suffering following the attack and its catastrophic impact on the husband and father of their family and his later tragic death. They sat by and watched him die from his injuries. They have thereby suffered damages in the amount of $10,000,000.00 each, besides costs.

WHEREFORE, Plaintiff, Karin Gertrud Harris and Priscilla Alexandra Harris, demands judgment against the Defendants, Libya and the JSO, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) each, plus costs.

### COUNT IV
### Claim Of Karin Gertrud Harris and Priscilla Alexandra Harris, For Punitive Damages
(Under state common law and 28 U.S.C. § 1605A(c))

27. Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

28. The actions of the agents of Defendants, Libya and JSO, as above set forth, were intentional and malicious and in willful, wanton and reckless disregard of Plaintiffs' rights and physical well being. All of the acts of agents in Germany were facilitated

by funding, training and support by Libya and JSO. In accordance with 28 U.S.C. § 1605A(c) and under state common or statutory law the Defendants, Libya and JSO, are therefore vicariously liable for those actions.  In providing such funding, direction and training, Libya and JSO rendered material support to those actually carrying out the acts above described. An award of punitive damages is requested as to the Defendants in accordance with the provisions of Public Law 110-181 § 1083, amending 28 U.S.C. § 1605 and making a foreign state that was or is designated as a state sponsor of terrorism vicariously liable for punitive damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants, Libya and the JSO, jointly and severally, in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00), plus costs.

**Date: January 31, 2008**                                  Respectfully submitted,


                                              /s/ *Steven R. Perles*
                                              Steven R. Perles       (D.C. Bar# 326975)
                                              Edward MacAllister   (D.C. Bar# 494558)
                                              Perles Law Firm, PC
                                              1146 19th Street, NW
                                              Suite 500
                                              Washington, DC 20036
                                              202.955.9055
                                              202.955.3806 (facsimile)

                                              HANLY CONROY BIERSTEIN SHERIDAN
                                              FISHER & HAYES LLP
                                              Jayne Conroy, Esq. (D.C. Bar# 451475)
                                              Paul J. Hanly, Jr., Esq.
                                              112 Madison Avenue
                                              New York, New York 10016-7416
                                              (212) 784-6400 (Main)
                                              (212) 784-6402 (Direct)
                                              (212) 784-6420 (Facsimile)
                                              E-mail: jconroy@hanlyconroy.com

                                              *Attorneys for Plaintiffs*