UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIN GERTRUDE HARRIS, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | 1:06-cv-00732-RWR |
| ) | |
| SOCIALIST PEOPLE'S LIBYAN ARAB ) | |
| JAMAHIRIYA, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## LIBYAN STATE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants Socialist People's Libyan Arab Jamahiriya and Jamahiriya Security Organization (collectively the "Libyan State Defendants") respectfully move this Court for an order dismissing with prejudice Plaintiffs' Amended Complaint in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction.

In support of its motion, the Libyan State Defendants respectfully submit the accompanying memorandum of points and authorities.

Dated: April 11, 2008

Respectfully submitted,

**WHITE & CASE LLP**

/ s / Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Defendants Socialist People's Libyan Arab Jamahiriya and Jamahiriya Security Organization*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIN GERTRUDE HARRIS, *et al.*, | ) <br> ) |
| *Plaintiffs*, | ) <br> ) |
| v. | )    1:06-cv-00732-RWR <br> ) |
| SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, *et al.*, | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

**THE LIBYAN STATE DEFENDANTS' MEMORANDUM IN
<u>SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel.: (202) 626-3600
Fax: (202) 639-9355

*Counsel for the Socialist People's Libyan
Arab Jamahiriya and the Jamahiriya
Security Organization*

**TABLE OF CONTENTS**

                                                                     **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

ARGUMENT ........................................................................................................................2

    I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER
       PLAINTIFFS' CLAIMS ............................................................................................2

        A.    Plaintiffs' Prior Action Does Not Satisfy The Limited Criteria
              Established By Congress To Bring That Action Within The Scope
              Of The FSIA Amendments………………………………………………………..2

        B.    The FSIA Does Not Provide Courts With Subject-Matter Jurisdiction
              Over Claims Brought By Indirect Victims Of Terrorism…………………………5

CONCLUSION………………………………………………………………...............10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                     **Page**

*Cicippio-Puleo v. Islamic Republic of Iran*,
  353 F.3d 1024 (D.C. Cir. 2004)..............................................................................................3

*Cicippio-Puelo v. Islamic Republic of Iran*,
  Civ. No. 01-1496, 2002 WL 34408105 (D.D.C. June 21, 2002),
  *aff'd on other grounds*, 353 F.3d 1024 (D.C. Cir. 2004)......................................................8, 9

*\*Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*,
  No. 06-727 (GK), 2007 WL 2007509 (D.D.C. July 9, 2007).......................................................2

*Fernandez-Vargas v. Ashcroft*,
  548 U.S. 30 (2006)................................................................................................................3

*In re ADC Telecommc'ns, Inc.*
  331 F. Supp. 2d 799 (D. Minn. 2004)...................................................................................4

*I.N.S. v. St. Cyr,*
  533 U.S. 289 ........................................................................................................................4

*John R. Sand & Gravel v. United States*,
  128 S. Ct. 750 (2008)........................................................................................................3, 4

*Jarecki v. G.D. Searle & Co.*,
  367 U.S. 303 (1961).............................................................................................................7

*Kalil v. Johanns*,
  407 F. Supp. 2d 94 (D.D.C. 2005) ........................................................................................6

*\*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994).............................................................................................................3

*\*Lindh v. Murphy*,
  521 U.S. 320 (1997).............................................................................................................3

*O'Gilvie v. United States*,
  519 U.S. 79 (1996)...............................................................................................................6

*\*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp*
  127 S. Ct. 1184 (2007)……………………………………………………………………..4

*Steel Co. v. Citizens for Better Env't*
523 U.S. 83 (1998)……………………………………………………………………………..4

*United States v. Nordic Village, Inc.*,
  503 U.S. 30 (1992)...............................................................................................................9

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                                          **Page**

*Vine v. Republic of Iraq*
  459 F. Supp. 2d 10 (D.D.C. 2006)……………………………………………………………….2

*Yanco v. United States*,
  258 F.3d 1356 (Fed. Cir. 2001)..................................................................................................6

**FEDERAL STATUTES AND RULES**

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611 (2008) ......................... *passim*

National Defense Authorization Act of 2008, Pub. L. No. 110-181 ...................................... *passim*

28 U.S.C. § 1605(a)(7) (repealed 2008) ................................................................................ *passim*

Federal Employees' Compensation Act (FECA)..............................................................................6

**LEGISLATIVE MATERIALS**

Antiterrorism and Effective Death Penalty Act of 1996, Public Law 104-132,
  110 Stat. 1241 (Apr. 24, 1996) ...................................................................................................7

Comprehensive Antiterrorism Act of 1995:  Report of the Committee on the Judiciary,
  H.R. Rep. No. 104-383 (1995)....................................................................................................8

*The Foreign Sovereign Immunities Act: Hearing on S. 825 Before the Subcomm. On
  Courts and Administrative Practice of the S. Comm. on the Judiciary*, 103rd Cong.
  1077 (1994)..................................................................................................................................4

H.R. 934, 103rd Cong. (1994) .......................................................................................................7, 8

H.R. Rᴇᴘ. Nᴏ. 103-702 (1994) .......................................................................................................5, 7

H.R. Rep. No.102-367(I) (1991).........................................................................................................5

Geneva Convention for the Amelioration of the Condition of the Wounded and Sick
  in Armed Forces in the Field, art. 3, Aug. 12, 1949, 6 U.S.T. 3114,
  75 U.N.T.S. 31 ............................................................................................................................5

**OTHER MATERIALS**

Black's Law Dictionary (7th Ed. 1999)..............................................................................................6

Oxford English Dictionary (2008 ed.) ...............................................................................................6

## INTRODUCTION

The Amended Complaint alleges an act of terrorism ― specifically a bombing at a crowded nightclub in Germany ― resulting in the death of Lorenzo Harris. As the basis for subject-matter jurisdiction, the Amended Complaint relies exclusively upon the newly enacted 28 U.S.C. § 1605A. Plaintiffs do not have subject-matter jurisdiction under 28 U.S.C. § 1605A(a), because their original action lacked subject-matter jurisdiction under 28 U.S.C. § 1605(a)(7). Specifically, Plaintiffs' claims fell outside the jurisdictional limitations period for § 1605(a)(7) actions. Because this action lacked subject-matter jurisdiction at the start, this action could not have been "adversely affected" on the grounds that neither Section 1605(a)(7) nor the Flatow Amendment created a cause of action, as required to bring this pending action under the new law.

In the alternative (and at a minimum), the personal injury claims of Karin and Priscilla Harris must be dismissed because the Court lacks jurisdiction under § 1605A.

## ARGUMENT

**I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

   **A.    Plaintiffs' Prior Action Does Not Satisfy The Limited Criteria Established By Congress To Bring That Action Within The Scope Of The FSIA Amendments**

This action was untimely when filed. On the face of both the original Complaint and the new Amended Complaint, Plaintiffs' claims arose on April 5, 1986. This action was not commenced until over twenty years later, on April 19, 2006.

When this action was filed, subject-matter jurisdiction rested exclusively upon 28 U.S.C. § 1605(a)(7), and 28 U.S.C. § 1605(f) set forth a specific limitations period for actions brought under § 1605(a)(7):

> No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

28 U.S.C. § 1605(f).

Plaintiffs' action plainly was not within 10 years of when the cause of action arose. Nor were Plaintiffs' claims saved through principles of equitable tolling, as this Court has specifically held that equitable tolling under § 1605(f) "does not bring about an automatic extension of the statute of limitations by the length of the tolling period. Instead, the doctrine provides extra time to a plaintiff only if it is needed, and only for a reasonable period." *Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, No. 06-727 (GK), 2007 WL 2007509, at *2 (D.D.C. July 9, 2007) (internal quotation omitted) (dismissing action filed in 2006 as untimely under § 1605(f) where cause of action arose in 1985); *Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, 28 (D.D.C. 2006) (dismissing action filed in 2001 as untimely under § 1605(f) where cause of action arose in 1990, at the latest). The untimeliness made § 1605(a)(7) unavailable and left Plaintiffs' action without a basis for subject-matter jurisdiction.

Plaintiffs invoke the newly enacted § 1605A, as though that provision can transform their jurisdictionally deficient action into a viable one. But newly enacted § 1605A does not apply to Plaintiffs' action.

Section 1605A was created by Section 1083 of the National Defense Authorization Act of 2008, Pub. L. No. 110-181 (the "Defense Act"), which amended the FSIA in certain respects.

2

A copy of Section 1083 of the Defense Act is attached hereto as Exhibit A. Among other things, § 1605A creates a new cause of action for certain types of terrorism-related claims against foreign states, and repeals former § 1605(a)(7) and § 1605(f). *See* 28 U.S.C. § 1605A(c) and § 1083(b). Section 1083(c), "Application to Pending Cases," allows for retroactive application of § 1605A(c) only if the express statutory criteria set forth in Section 1083(c)(2)(A) are satisfied. *Compare with Lindh v. Murphy*, 521 U.S. 320, 329 n.4 (identifying the following as an example of a statement that might qualify as sufficiently clear to have retroactive effect: "[This Act] shall apply to all proceedings pending on or commenced after the date of enactment of this Act") (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 260 (1994)); *Fernandez-Vargas v. Ashcroft*, 126 S. Ct. 2422, 2428 (2006) (explaining that courts apply the presumption against retroactivity by construing a statute as inapplicable to a past act "absent a clear indication from Congress that it intended such a result") (citation omitted).

Section 1083(c)(2)(A), relating to "prior actions," allows retroactive application of § 1605A(c), only if, among other things, they were "adversely affected" by the lack of a federal cause of action against the state under § 1605(a)(7) or the Flatow Amendment. Contrary to Plaintiffs' apparent belief, Section 1083(c)(2) does *not* revive cases that had jurisdictional defects.

Because § 1605(a)(7) was "merely a jurisdiction conferring provision that does not otherwise provide a cause of action," *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004), an action that does not satisfy all requirements set forth in § 1605(a)(7) lacks subject-matter jurisdiction. Those requirements include the timeliness requirements of former § 1605(f) tied to § 1605(a)(7). *See John R. Sand & Gravel v. United States*, 128 S. Ct.

3

750, 753 (2008) (describing a statute of limitations "limiting the scope of a governmental waiver of sovereign immunity" as "jurisdictional") (citations omitted).

Plaintiffs' action did not meet the threshold jurisdictional requirements of § 1605(a)(7) and, thus, could not have been "adversely affected" on the grounds that § 1605(a)(7) or the Flatow Amendment failed to create a cause of action against the state; the Court would not have been permitted to hear any causes of action. *See* Section 1083(c)(2)(A)(iii); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998))). Under the plain language of Section 1083(c)(2)(A), Plaintiffs therefore cannot retroactively bring their claims under § 1605A. *See also In re ADC Telecommc'ns, Inc. Sec. Litig.*, 331 F. Supp. 2d 799, 802-03 (D. Minn. 2004) (requiring under the presumption against retroactivity a statute to be "so clear that it could sustain only one interpretation" before allowing a statute "to apply retroactively or to revive previously time-barred claims") (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 317 (2001) (other citations omitted)).

Even if § 1605A did apply, it is not at all clear that the definition of "extrajudicial killing" found in § 1605A was intended to include terrorist acts against groups of people, such as the attack alleged here. The language of § 1605A comes from § 1605(a)(7), the legislative history of which demonstrates that Congress was focused on targeted summary executions carried out without the procedural safeguards of a court during its deliberations. *See The Foreign Sovereign Immunities Act: Hearing on S. 825 Before the Subcomm. on Courts and Administrative Practice of the S. Comm. on the Judiciary*, 103rd Cong. 1077 (1994) (statement of Rep. Mazzoli) ("H.R. 934 would add a new exception to the FSIA which would allow U.S. citizens who are subjected

4

to torture, extrajudicial killing, *summary execution as it is called*, or genocide abroad by a foreign sovereign to bring suit against the foreign sovereign . . . .") (emphasis added); H.R. REP. NO. 103-702 at 4 (1994) ("[A] foreign sovereign violates international law if it practices torture, *summary execution*, or genocide.") (emphasis added).

The term "extrajudicial killing" as used in § 1605(a)(7) was borrowed from the Torture Victim Protection Act of 1991, 28 U.S.C. 1350 note ("TVPA"), which expressly based the definition of the term on Common Article 3 of the Geneva Conventions. Common Article 3 provides among other acts prohibited by the Conventions: "the passing of sentences and the carrying out of executions without previous judgment pronounced by a regularly constituted court, affording all the judicial guarantees which are recognized as indispensable by civilized people." *See* H.R. REP. NO. 102-367(I) at 87 (1991) ("The concept of "extrajudicial killings" is derived from article 3 common to the four Geneva Conventions of 1949"); Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in Armed Forces in the Field, art. 3, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31. The express incorporation into the TVPA and the FSIA of these principles proscribing executions carried out without legal process illustrates Congressional intent to narrowly define the acts covered by the term "extrajudicial killing" in § 1605A as summary killings occurring without due process of law. Thus, it is not apparent that Plaintiffs' claims fall within the intended scope of the statute.

### B. The FSIA Does Not Provide Courts With Subject-Matter Jurisdiction Over Claims Brought By Indirect Victims Of Terrorism

The Court also lacks subject-matter jurisdiction over the personal claims of Plaintiffs' Karin Harris and Priscilla Harris, set forth in Count III and IV of the Amended Complaint. Count III purports to state a claim for "personal injury, solatium and intentional infliction of mental distress" and Count IV purports to state a claim for "punitive damages" under 28 U.S.C.

1605A(c).  Section 1605A, however, of the FSIA does not create an exception to foreign sovereign immunity for the secondary claims of indirect victims of terrorist acts, i.e., the claims of family members, asserted in their personal capacities.

Section 1605A withdraws FSIA immunity in cases "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ." 28 U.S.C. § 1605A(a).  Plaintiffs Karin Harris and Priscilla Harris are not "personal injury" victims within the meaning of Section 1605A(a) and their claims must be dismissed.

Whether the term "personal injury" on its face encompasses only physical injury or also emotional injury is ambiguous.  *See, e.g., O'Gilvie v. United States*, 519 U.S. 79, 89 (1996) (explaining that Congress "wanted to clarify that" the punitive damages personal injury or sickness exclusion to exclude "nonphysical injuries" because the law was "unclear") (citations omitted); *Kalil v. Johanns*, 407 F. Supp. 2d 94, 100 (D.D.C. 2005) (explaining that the D.C. Circuit has not addressed a circuit split as to whether the Federal Employees' Compensation Act's provision for "injury or death" includes nonphysical injuries); *Yanco v. United States*, 258 F.3d 1356, 1363 (Fed. Cir. 2001) ("To begin with, it appears that, as far as state workmen's compensation laws are concerned, the term 'personal injury' may or may not be limited to physical injuries.") (citations omitted); *see also* BLACK'S LAW DICTIONARY 790 (8th ed. 2004) (defining "personal injury" as "In negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury"); *Oxford English Dictionary* (2008 ed.), available at http://www.oed.com (defining "personal injury" as "injury inflicted on a person, esp. to the body; (Law) such injury as opposed to damage to a person's property or reputation").

6

To the extent that such ambiguity may be resolved without resorting to the legislative history, the fact that personal injury is situated next to the word "death" is indicative of the fact that bodily injury is required. *See Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.").

Nevertheless, the legislative history behind former Section 1605(a)(7) (which is identical to the text of Section 1605A quoted above) confirms that Congress did not intend to open up U.S. courts to secondary claimants but instead intended that only primary victims or their estates may bring actions under the FSIA. Although there is sparse legislative history on the amendments to the FSIA made in the Antiterrorism and Effective Death Penalty Act of 1996, Public Law 104-132, 110 Stat. 1241 (Apr. 24, 1996) ("AEDPA"), a similar precursor amendment was previously passed by the House Committee of the Judiciary. That bill, H.R. 934, H. Rep. 103-702, 103rd Congress, Aug. 16, 1994, removed foreign sovereign immunity in cases "in which money damages are sought against a foreign state for personal injury or death of a United States citizen." According to the accompanying House Report, the legislation was "necessary to clarify and expand the circumstances in which an American who is grievously mistreated abroad by a foreign government can bring suit in U.S. courts against the foreign government under the [FSIA]." *Id.* at 3. The bill was designed to provide a remedy to those "physically abused abroad" or killed as a result of certain listed predicate acts. *Id.* Specifically, H.R. 934 "would add a new exception to the FSIA which would allow U.S. citizens who are subjected to torture, summary execution, or genocide abroad by a foreign sovereign to bring suit in the United States against the foreign sovereign." *Id.* at 4. The only means by which someone other than the

direct victim abroad may bring suit is "where the victim is not alive to bring suit" so that "the victim's legal representative or another person who is a proper claimant in an action for wrongful death may bring suit." *Id.* at 5. *See also Comprehensive Antiterrorism Act of 1995*: *Report of the Committee on the Judiciary*, H.R. REP. NO. 104-383 at 105 (1995) ("It is expected that *a lawsuit proceeding under this section will be brought either by the victim himself or by his estate in the case of death or mental incapacity*.") (emphasis added).

Congressman Romano L. Mazzoli, who introduced H.R. 934 (*id.* at 6), stated: "H.R. 934 would add a new exception to the FSIA which would allow U.S. citizens who are subject to torture, extrajudicial killing, summary execution, as it is called, or genocide abroad by a foreign sovereign to bring suit . . . ." *Foreign Sovereign Immunities Act: Hearing Before the Subcommittee on Courts and Administrative Practice, Senate Judiciary Committee,* 103rd Cong. 28 (June 1994) (statement of Congressman Mazzoli). H.R. 934 and S. 825 (the Senate bill being considered during the subcommittee hearing) — like AEDPA — contained the "personal injury or death" language. *Id.* at 28; *see also* H.R. 934 (103rd Congress, Feb. 17, 1993). In view of the legislative history, this Court should not expand FSIA subject-matter jurisdiction to include the claims of secondary victims.

At least one court has addressed this issue. In *Cicippio-Puelo v. Islamic Republic of Iran*, Civ. No. 01-1496, 2002 WL 34408105 (D.D.C. June 21, 2002), *aff'd on other grounds*, 353 F.3d 1024 (D.C. Cir. 2004), the court analyzed whether secondary claimants may recover by reference to the types of damages afforded under former Section 1605(a)(7). There, the children and siblings of a victim of hostage-taking and torture asserted personal claims for intentional infliction of emotional distress and solatium. The *Ciccipio* court held that 28 U.S.C. § 1605(a)(7) did not confer subject-matter jurisdiction over those claims. To reach this conclusion,

the court first looked to the scope of the waiver of immunity, finding that as a rule, any such waiver must be narrowly construed, *Cicippio-Puleo*, 2002 WL 34408105, at *2, noting that when the source of the waiver is the FSIA, this rule of construction is equally or more strictly enforced. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (holding that waivers of sovereign immunity, to be effective, must be unequivocally expressed and are not generally to be liberally construed). Within this analytical framework, the court found it significant Congress decided not to include emotional distress as an element of damages recoverable from foreign states for terrorist acts such as hostage-taking, concluding that § 1605(a)(7) did not confer subject-matter jurisdiction to entertain claimant's secondary emotional distress claims. *Cicippio-Puleo*, 2002 WL 34408105, at *2.

This Court lacks jurisdiction over Plaintiffs' intentional infliction of emotional distress claims because they do not fall within the compensable claims enumerated in the statute. Here, "absent clearer evidence to the contrary," this Court must conclude that, "Congress did not intend the FSIA to so enlarge the scope of potential liability of sovereign foreign states — even terrorist states— to require them to compensate non-victim plaintiffs for damages which not even a domestic terrorist would be liable . . . ." *Cicippio-Puleo*, 2002 WL 34408105 at *3.

## CONCLUSION

For the foregoing reasons, the Court must dismiss the Amended Complaint with prejudice and in its entirety for lack of subject-matter jurisdiction. The Libyan State Defendants expressly reserve all rights, defenses, privileges and immunities.

Dated: April 11, 2008                                       Respectfully submitted,

**WHITE & CASE** LLP

/s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel.: (202) 626-3600
Fax: (202) 639-9355

*Counsel for the Socialist People's Libyan Arab Jamahiriya and the Jamahiriya Security Organization*