**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KARIN HARRIS, <u>et</u> <u>al.</u>, | ) |
| | ) |
|       Plaintiffs, | ) |
| | ) |
|       v. | )   Civil Action No. 06-732 (RWR) |
| | ) |
| SOCIALIST PEOPLE'S LIBYAN | ) |
| ARAB JAMAHIRIYA, <u>et</u> <u>al.</u>, | ) |
| | ) |
|       Defendants. | ) |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs bring this action against the Socialist People's
Libyan Arab Jamahiriya ("Libya") and the Jamahiriya Security
Organization (collectively, the "Libyan defendants") under 28
U.S.C. § 1605A(c) for claims arising from the 1986 bombing at the
LaBelle Discotheque in Berlin, Germany.  The Libyan defendants
have moved to dismiss under Federal Rules of Civil Procedure
12(b)(1) and 12(b)(2), alleging that the requirements of the
Libyan Claims Resolution Act ("LCRA"), Pub. L. No. 110-301, 122
Stat. 2999 (2008), have now been fulfilled so that the LCRA
operates to divest the court of subject matter and personal
jurisdiction.  Because the LCRA has divested the court of
jurisdiction over claims brought under § 1605A(c), the
defendants' motion to dismiss the amended complaint will be
granted.

- 2 -

<u>BACKGROUND</u>

Plaintiffs are Karin Harris and Priscilla Alexander Harris, the wife and daughter of Lorenzo Harris, a member of the United States Armed Forces injured by the April 5, 1986 bombing at the LaBelle Discotheque.  (Am. Compl. ¶ 3.)  The plaintiffs bring their amended complaint against the Libyan defendants under 28 U.S.C. § 1605A(c), a provision of the Foreign Sovereign Immunities Act ("FISA"), alleging that the 1986 bombing was a terrorist attack for which the Libyan defendants bear responsibility.  The plaintiffs allege claims of personal injury, assault, battery, intentional infliction of mental distress, and solatium, and seek money damages, including punitive damages.

The Libyan defendants have moved to dismiss the plaintiffs' amended complaint under Rules 12(b)(1) and 12(b)(2), arguing that the LCRA has divested the court of subject matter jurisdiction over the plaintiffs' claims and personal jurisdiction over the Libyan defendants.  The plaintiffs oppose dismissal at this time, alleging that the LCRA may constitute an unconstitutional taking if the plaintiffs are not adequately compensated under the State Department's procedures to settle claims under the settlement agreement between the United States and Libya, and arguing the court may not dismiss their claims until more is known about the

- 3 -

State Department's procedures.[1]  The United States has filed a statement of interest stating its position that the LCRA "expressly eliminated jurisdiction under [FISA] over plaintiffs' claims against the Libyan defendants, and has further expressly precluded a private cause of action against the Libyan defendants."  (U.S. Stmt. of Interest at 2.)

DISCUSSION

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing a court's subject matter jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) ("The party invoking federal jurisdiction bears the burden of establishing its existence.")  In reviewing the motion, a court accepts as true all of the factual allegations contained in the complaint, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), but may also consider "undisputed facts evidenced in the record."  Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).

The "subject-matter jurisdiction of the lower federal courts is determined by Congress 'in the exact degrees and character which to Congress may seem proper for the public good.'"

---

[1] The plaintiffs also have filed a motion to stay the proceedings and consideration of the defendant's motion until more is known about the State Department's procedures to carry out the settlement agreement between the United States and Libya.

- 4 -

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

433 (1989).  In enacting FISA, Congress made a foreign state

"immune from the jurisdiction of the courts of the United States

and of the States except as otherwise provided in [28 U.S.C.]

sections 1605 to 1607[.]"  28 U.S.C. § 1604.  Plaintiffs bring

their claims under 28 U.S.C. § 1605A(c).  Under this section,

members of the armed forces or their legal representatives have a

private right of action against a "foreign state that is or was a

state sponsor of terrorism" for

> personal injury or death that was caused by an act of
> torture, extrajudicial killing, . . . or the provision
> of material support or resources for such an act if
> such act or provision of material support or resources
> is engaged in by an official, employee, or agent of
> [the] foreign state while acting within the scope of
> his or her office, employment or agency.

28 U.S.C. §§ 1605A(a)(1), (c).

In 2008, the President signed into law the LCRA, which

expressed Congress' support for

> the President in his efforts to provide fair
> compensation to all nationals of the United States who
> have terrorism-related claims against Libya through a
> comprehensive settlement of claims by such nationals
> against Libya pursuant to an international agreement
> between the United States and Libya as a part of the
> process of restoring normal relations between Libya and
> the United States.

LCRA § 3, 122 Stat. at 2999.  Section 5 of the LCRA provides for

restoring Libya's immunity from claims brought under § 1605A(c)

of FISA once the United States and Libya reach an agreement.  To

- 5 -

restore Libya's immunity, the Secretary of State submits a

certification to the appropriate congressional committees

> stating that the United States Government has received
> funds pursuant to the claims agreement that are
> sufficient to ensure . . . fair compensation of claims
> of nationals of the United States for wrongful death or
> physical injury in cases pending on the date of
> enactment of [the] Act against Libya arising under [28
> U.S.C. § 1605A.]

LCRA § 5(a)(2), 122 Stat. at 3001.  Upon the Secretary's

submission of the certification,

> Libya, an agency or instrumentality of Libya, and the
> property of Libya or an agency or instrumentality of
> Libya, shall not be subject to the exceptions to
> immunity from jurisdiction, liens, attachment, and
> execution contained in section 1605A . . . of title 28,
> United States Code; [and] section 1605A(c) of title 28,
> United States Code . . . shall not apply with respect
> to claims against Libya, or any of its agencies,
> instrumentalities, officials, employees, or agents in
> any action in a Federal or State court[.]

LCRA § 5(a)(1), 122 Stat. at 3000-01.[2]

On October 31, 2008, the Secretary of State transmitted to

Congress her certification satisfying the requirements of

§ 5(a)(2).[3]  (See Defs.' Mot. to Dismiss, Ex. 2.)  As a result,

under § 5(a)(1) of the LCRA, the Libyan defendants' immunity from

---

[2]Subsection 5(a) "appl[ies] only with respect to any conduct
or event occuring before June 30, 2006, regardless of whether, or
the extent to which, application of [the] subsection affects any
action filed before, on, or after that date."  LCRA § 5(b), 122
Stat. at 3001.

[3]The plaintiffs do not dispute the government's
representation that the October 31, 2008 certification
transmitted to Congress satisfies the Secretary's obligations
under § 5(a)(2) and triggers the application of § 5(a)(1).

- 6 -

suit has been restored and the court has been divested of subject matter jurisdiction over the plaintiffs' claims.[4]

Although the plaintiffs do not dispute that the LCRA divests the court of jurisdiction, they nonetheless suggest that dismissal is inappropriate at this time because in the event that they do not receive adequate compensation under the State Department's procedures, the LCRA would be an unconstitutional government taking of their property under the Fifth Amendment. The plaintiffs' contention that they may have a Fifth Amendment takings claim for just compensation against the United States, which is not a defendant in the present action, does nothing to defeat the fact that the court is now divested of jurisdiction over the plaintiffs' claims against the Libyan defendants.  See Antolok v. United States, 873 F.2d 369, 378 (D.C. Cir. 1989) (concluding that once Congress by statute divested the district court of jurisdiction over the plaintiffs' claims against the United States, the plaintiffs' allegation that the statute was an unconstitutional taking did not prevent dismissal of the plaintiffs' claims, but could be pursued instead in the United

---

[4]In addition, because § 5(a)(1) of the LCRA restores Libya's immunity, the court also lacks personal jurisdiction over the defendants.  Under 28 U.S.C. § 1330(b), personal jurisdiction over a foreign state exists for every claim brought under the FISA exceptions to immunity in 28 U.S.C. §§ 1605 to 1607.  "Thus, if none of the exceptions . . . applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction."  Verlinden v. Cent. Bank of Nigeria, 461 U.S. 480, 485 n.5 (1983).

- 7 -

States Court of Federal Claims under the Tucker Act, 28 U.S.C.

§ 1491(a)(1)).[5]  Accordingly, because the LCRA divests the court

of jurisdiction over the plaintiffs' claims, the defendants'

motion to dismiss will be granted.

<u>CONCLUSION</u>

The undisputed facts demonstrate that the Secretary of State

submitted a certification to Congress satisfying § 5(a)(2) of the

LCRA and restored Libya's immunity from the court's jurisdiction.

Thus, the defendants' motion to dismiss the plaintiffs' amended

complaint will be granted and the plaintiffs' motion to stay the

proceedings will be denied as moot.  A final, appealable Order

accompanies this Memorandum Opinion.

SIGNED this 5th day of May, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge

---

[5]Similarly, dismissal of the plaintiffs' claims in this
action does not prevent the plaintiffs from bringing a takings
claim against the United States in the appropriate court.  <u>See</u>
<u>Dames & Moore v. Regan</u>, 453 U.S. 654, 689 (1981) (noting that the
petitioner could bring a Fifth Amendment claim against the United
States under the Tucker Act if he believed the President's
suspension of his claim against Iran constituted an unlawful
taking of his property); <u>Antolok</u>, 873 F.2d at 378.